[No. 1633-1.   Division One—Panel 1.   March 19, 1973.]

JERRY E. FRISCH *et al., Appellants,* v. PUBLIC UTILITY DISTRICT No. 1 OF SNOHOMISH COUNTY, *Respondent.*

*Bell, Ingram, Johnson & Level* and *Richard B. Johnson,* for appellants.

*Anderson, Hunter, Carlson & Dewell, James P. Hunter,* and *William W. Baker,* for respondent.

FARRIS, J.—Jerome and Thelma Frisch appeal from a trial court order granting a summary judgment of dismissal of their personal injury action against Public Utility District No. 1 of Snohomish County, Washington.

On March 30, 1971, Mr. Frisch parked a truck loaded with bricks near his property and began unloading the bricks with a mobile truck crane. A power line which had been installed to provide electrical service to Frisches' home was directly overhead at a height of 31 feet. Before starting to operate the crane, Frisch set the hydraulic stabilizers on either side of the truck by placing a stack of two-by-twelve boards under each stabilizer. While he was lifting a pallet of bricks, the boards under the leveler on one side broke. Mr. Frisch then raised the hydraulic leveler in order to put new boards under the truck to level it. At some point during this procedure, the cable on the boom snapped and the broken end wrapped around the power line, thereby energizing the cable, boom and truck. Mr. Frisch was apparently touching the energized boom for he was thrown under the truck and injured severely by an electrical charge. Mrs. Frisch, upon observing the situation, went to assist her husband and was severely injured when she apparently touched the energized boom truck. They both suffered retrograde amnesia and neither can remember exactly what happened.

A code providing standards for the placement of transmission lines, including minimum clearance requirements and other safety standards, was promulgated by the Department of Labor and Industries pursuant to the authority vested in it by RCW 19.29. The standards are codified in WAC 296-44. It is admitted that the utility company surpassed all of the clearance requirements and standards. The Frisches argue however that the summary judgment dismissing their action should not have been granted because:

(1) Compliance with the standards does not automatically protect the utility from a finding of negligence; it is for the finder of fact to determine whether under the cir-

cumstances the utility company used the highest degree of care to protect every foreseeable person from every foreseeable risk.

(2) The utility company failed to obtain a franchise from the Board of County Commissioners of Snohomish County to maintain the transmission lines and therefore the act of maintaining the lines constituted a nuisance per se; that contributory negligence is not a defense in a nuisance action.

(3) Even if the court found that the utility's failure to obtain a franchise did not constitute a nuisance and that contributory negligence was a defense, the negligence of Mr. Frisch cannot be imputed to his wife.

The highest degree of care must be exercised by the owners or erectors of high voltage wires to protect every foreseeable person from contact with the wires. *Vannoy v. Pacific Power & Light Co.*, 59 Wn.2d 623, 369 P.2d 848 (1962). It is equally true that a utility company is not responsible for accidents which cannot be anticipated.

> But where an electric company maintains its wires at a height at which they would not come in dangerous proximity to such persons or things as it reasonably ought to anticipate might rightfully come under or near them, it is not chargeable with negligence because some one doing an act which it had no reason to expect suffers an injury which might not have been sustained if the wires had been safeguarded in a different manner from that in which they were.

*Salt River Valley Water Users' Ass'n v. Compton,* 39 Ariz. 491, 499, 8 P.2d 249 (1932).

The transmission lines were at a height of 31 feet and carried 7,200 volts of electrical energy. The clearance requirements for lines of 751 to 15,000 volts are 20 feet above streets or alleys in urban areas and 18 feet along roads in rural districts. WAC 296-44-316. The line in question was a minimum of 11 feet or 55 percent higher than code minimum. The lines were installed in the usual and proper manner. The record reflects that there was no allegation

sufficient to take the issue of primary negligence on the part of the utility district to the jury. The allegations in the record fail to raise a question of even an inference of negligence.

■ Further, the trial court could properly find that the maxim of volenti non fit injuria applied as a matter of law.

> [T]he doctrine of *volenti non fit injuria* is predicated upon the theory of knowledge and appreciation of the danger involved and a voluntary assent thereto; it involves the taking of a calculated risk.

*Anderson v. Rohde*, 46 Wn.2d 89, 91, 278 P.2d 380 (1955). The record reflects that Frisch was aware of the danger involved in locating the truck directly beneath the transmission lines and, nevertheless, continued with the project.

> Q Are you aware that if you come in contact with an electrical transmission line that is uninsulated that it can very well kill you or seriously injure you?
> A Yes.
> . . .
> Q Well, tell me just exactly what degree you were aware of the danger of overhead uninsulated electrical transmission lines.
> A On that particular day?
> Q Yes, and preceding it.
> A Well, I would know better than to take a pole and reach up there and touch them, or even get within ten feet of them.
> Q You would know better than to take a pole and reach up and touch them, or you would know better than to get within ten feet of them? Why would you know better than that?
> A Because you would be taking the risk of getting electrocuted if you touched them, or if you happened to stumble with a pole and fell.
> Q When you say "get electrocuted" that means you might even be killed?
> A That's right.

■ There are no allegations to support the claim that the erection of the power lines constituted a public nuisance. It is a public nuisance

> To obstruct or encroach upon public highway, private

ways, streets, alleys, commons, landing places, and ways to burying places.

RCW 7.48.140(4). However,

> Poles and wires for carrying electric current are considered a customary incidental use of highways, and are not now generally deemed such an encroachment upon the right of abutting property owners as to afford them a right to compensation for the additional servitude to which their fee interests are subjected.

*State ex rel. York v. Board of County Comm'rs*, 28 Wn.2d 891, 904, 184 P.2d 577 (1947). The only allegation upon which the claim of nuisance is predicated is the failure of the utility district to apply for and receive a franchise. This question goes only to the propriety of the utility district's decision to erect the power lines; the question is not germane to the issue of nuisance.

A similar question was before the court in *Vannoy*, 59 Wn.2d at 633:

> [D]id the trial court err in admitting evidence tending to prove that appellant [power company] never acquired an easement to angle its transmission line over portions of the K & S building?

The court held that such evidence was irrelevant and should not have been admitted.

> The legal status of appellant [power company] vis-a-vis the property owner is germane to no issue in the case. The appropriateness of the location of the wiring is an issue separate and distinct from that of legal status. The location of the line is relevant; its legal status is not. It made not a particle of difference to the decedent whether or not the power company had procured an easement from the property owner to maintain the transmission line. The easement (or trespass) question was delved into by respondent at great length and the matter consumes many pages of the record. The only function which this evidence might have served would have been to prejudice the jury in evaluating appellant's case. The evidence invited the jury to attach special significance to a thoroughly irrelevant issue to the detriment of the power company.

The failure of the utility company to obtain the franchise was not a contributing factor to the accident.

The trial court in adherence to authority in this jurisdiction found that the negligence of the husband was imputed to his wife and therefore precluded her recovery. *See Raffensperger v. Towne*, 59 Wn.2d 731, 370 P.2d 593 (1962); *Ostheller v. Spokane & Inland Empire R.R.*, 107 Wash. 678, 182 P. 630 (1919).

Even if we agreed that this line of authority merits re-evaluation, we need not here reach that question. The failure of the record to support even an inference of primary negligence would defeat the wife's recovery in any event.

Affirmed.

SWANSON, C.J., and JAMES, J., concur.

Petition for rehearing denied May 30, 1973.

Review denied by Supreme Court July 24, 1973.