[No. 4210-3-III.   Division Three.   December 15, 1981.]

ESTATE OF JOSE LOPEZ CELIZ, ET AL, *Appellants,*
v. PUBLIC UTILITY DISTRICT NO. 1 OF
DOUGLAS COUNTY, ET AL,
*Respondents.*

*Richard S. Brown,* for appellants.

*Samuel C. Rutherford, James B. Drewelow,* and *Carlson, Drewelow & Arch,* for respondents.

MCINTURFF, C.J.—The estates of Jose Lopez Celiz and Roberto Lewis Sanchez appeal the granting of a motion for summary judgment in favor of Public Utility District No. 1 of Douglas County (PUD) and Columbia River Orchards Foundation (CRO) in wrongful death actions.

Messrs. Celiz and Sanchez were farm laborers living in

housing provided by CRO. On July 23, 1978, Mr. Celiz was in the process of moving from a house to a CRO duplex; Mr. Sanchez was assisting in the move. A television antenna had been assembled to a long section of irrigation pipe and the two men carried it on their shoulders to the duplex. The total assembly was in excess of 22 feet and when raised it came in contact with a power line carrying 13,200 volts of electricity.[1] Both men were electrocuted.

Wrongful death actions were filed against PUD and CRO alleging negligent maintenance, failure to warn and failure to inspect. Both PUD and CRO moved for summary judgment. After considering affidavits and depositions the trial judge granted the motion, stating PUD did not breach its duty of care and that CRO was not negligent.

■■ The objective of summary judgment is to avoid a useless trial. *Lamon v. McDonnell Douglas Corp.*, 91 Wn.2d 345, 349, 588 P.2d 1346 (1979). The burden is on the party moving for summary judgment to demonstrate the nonexistence of any genuine issue of material fact; if the party does, that party is entitled to judgment as a matter of law. *Ohler v. Tacoma Gen. Hosp.*, 92 Wn.2d 507, 511, 598 P.2d 1358 (1979); CR 56(c). A material fact is one upon which the outcome of the litigation depends. Affidavits, depositions and all other testimonial documents of the moving party must be scrutinized with care and all reasonable inferences from the evidence must be resolved against the movant. *Lamon, supra.* An appellate court must make the same inquiry as the trial judge. *Fahn v. Cowlitz County*, 93 Wn.2d 368, 373, 610 P.2d 857 (1980).

■ Although issues of negligence are ordinarily not susceptible to summary judgment, nothing precludes a court from deciding such issues as a matter of law. *LaPlante v. State*, 85 Wn.2d 154, 531 P.2d 299 (1975); *Green v. Burrill*, 26 Wn. App. 774, 614 P.2d 229 (1980). Appellants assign error to the granting of summary judgment of dismissal.

---

[1]Testimony of Allen Hobson, an electrical engineer, indicated the wire contained 13,200 volts phase–to–phase, or 7,620 volts phase–to–ground.

They contend the material issue of fact is whether PUD breached its duty of care.

A supplier of electricity owes the highest degree of care because of the very dangerous nature of electricity and the serious and often fatal consequences of negligent conduct in its control and use. In *Scott v. Pacific Power & Light Co.*, 178 Wash. 647, 650, 35 P.2d 749 (1934) the court, citing S. Croswell, *Electricity* § 234, at 205–06 (1895), set forth the following standard:

"Electric companies are . . . bound to use reasonable care in the construction and maintenance of their lines and apparatus, that is, such care as a reasonable man would use under the circumstances, and will be responsible for any conduct falling short of this standard. It follows from this rule, that the amount of care necessary varies with the danger which is incurred by negligence, for a prudent and reasonable man increases his care with the increase of danger. If but little danger is incurred, as, for instance, when the wires carry only a harmless electric current, such, for instance, as the telegraph or telephone current, only ordinary care may be required. *While if the wires carry a strong and dangerous current of electricity, so that negligence will be likely to result in serious accidents, and perhaps death, or if a harmless wire is in dangerous proximity to a high tension wire, a very high degree of care, indeed, the highest that human prudence is equal to, is necessary.* This is particularly true of electric light . . . wires, which carry a high tension current often of great danger. . . . The question of whether or not reasonable care has been used is in all cases for the jury, except where the court, on undisputed facts, can say that no reasonable man would have acted in the manner complained of, or that a reasonable man must have acted in the manner complained of. Between these limits the whole question is for the jury. . . ."

(Italics ours.) *See also Amant v. Pacific Power & Light Co.*, 10 Wn. App. 785, 787–88, 520 P.2d 181 (1974), *aff'd*, 84 Wn.2d 872, 529 P.2d 829 (1975).[2] The PUD maintains that

---

[2]The standard of care for electric utilities, *i.e.*, "the highest care that human prudence is equal to" was also enunciated in *Vannoy v. Pacific Power & Light Co.*, 59 Wn.2d 623, 369 P.2d 848 (1962); *Wray v. Benton County PUD*, 9 Wn.

since the electrical cable was vertically 23 feet above ground and 13 feet away from the duplex it complied with the required vertical and horizontal clearances specified in WAC 296–44–316[3] and thus presented a prima facie case of comporting with due care. However, compliance with electrical standards set forth in the Washington Administrative Code does not mean a lack of negligence; rather, it means compliance with our State's minimal requirements. *Wray v. Benton County PUD,* 9 Wn. App. 456, 459, 513 P.2d 99 (1973). Such compliance merely precludes a showing of negligence per se.

The duty of care exercised by an electrical power company is more than mere mechanical skill in compliance with minimal State requirements; it also includes foresight. It has been said that those engaged in the business of conducting electricity over high voltage wires are bound to anticipate more remote possibilities of danger. 26 Am. Jur. 2d *Electricity, Gas and Steam* § 43 n.17 (1966). We feel there remains a material question of fact whether the PUD breached its duty of care. The test of negligence is not whether the PUD should have anticipated the particular act from which the injury resulted, but instead is whether it should have foreseen the probability that injury might result from *any reasonable thing that might be done. Muck v. Snohomish County PUD 1,* 41 Wn.2d 81, 87, 247 P.2d 233 (1952); Annot., 82 A.L.R.3d 113, 147 § 10 (1978).

Obviously the erection of an antenna in an area of poor reception was a reasonable use of the property. Mr. Celiz, as tenant, had a right to use the property up to the boundary line. It is reasonable to anticipate that people, living in

---

App. 456, 513 P.2d 99 (1973); *Frisch v. PUD 1,* 8 Wn. App. 555, 557, 507 P.2d 1201 (1973); and *Richardson v. United States,* 645 F.2d 731, 733 (9th Cir. 1981).

[3]WAC 296–44–316 indicates that the minimum vertical clearance of wires above ground in this voltage class is 20 feet above public streets, alleys or roads in urban or rural districts, and driveways to residence garages. The minimum height above spaces or ways accessible to pedestrians only is 15 feet. WAC 296–44–322(3) provides that power lines maintain at least an 8–foot clearance from any structure.

homes provided for them, will erect television antennas, especially when they are not provided by the employer. In areas of poor reception such antennas may rise to heights in excess of the minimum requirements for heights of wires required by statute.[4] The homes provided are, by their nature, temporary[5] which could necessitate frequent installation and removal of antennas.[6] The space which these antennas occupy is clearly an area where people are located and thus creates a corresponding duty on the part of the power company to exercise the highest degree of care to protect the public.

There are at least three material issues to be decided by the trier of fact: (1) whether the PUD should have anticipated antennas in this particular area would extend so high[7] that they would contact a power line; (2) whether the PUD exercised the "highest degree of care that human prudence is equal to" in such circumstances; and (3) whether Messrs. Celiz and Sanchez comprehended the risk

[4]In her affidavit Mrs. Sanchez noted: "they can't get good reception or whatever it is because they are on that hill and you need long antennas."

[5]Mrs. Sanchez described the housing area in the orchard as a "labor camp." CRO maintained a seniority system whereby the most senior worker would have the opportunity to move into better residences as they became available. Mr. Sanchez initially worked for CRO about 3 years, then left the employment, but returned to work for CRO about 18 months prior to the accident. It was his practice to spend October through December in Mexico.

[6]Harlan R. Mayer, manager of CRO, stated in his deposition:
Q. In other words, if one of the parties wanted to have TV and get TV reception, that was up to them to provide for the antenna, etc?
A. That's right.
. . .
Q. Well, how many of the houses out there have antennas on them?
A. . . . There's probably half of them, twelve, fourteen.

[7]Although insulation may not always be possible, this fact does not relieve a company transmitting electricity of its alternative duty to put and keep the wires in such a place, or at such a height, that a person exercising his rights or privileges in a place where he may reasonably be expected to be, will not be injured.

involved.[8] As the court said in *Mississippi Power Co. v. Luter*, 336 So. 2d 753, 757 (Miss. 1976):

> After having reviewed the authorities, we have reached the conclusion that the question as to whether or not the defendant power company should have anticipated that persons using due regard for their own safety in constructing, erecting and using television antennas in the congested area of Hollandale would likely come into contact with its dangerous power lines so that it was the Power Company's duty to isolate, insulate or guard its lines against the likelihood of such contact with its lines by the lawful use of the inhabitants, and the issue as to the necessity of a warning and whether or not the Power Company failed to perform its duty in this regard were questions of fact for the jury.

citing *Mississippi Power & Light Co. v. Shepard*, 285 So. 2d 725, 739 (Miss. 1973). Furthermore, the court in *Meadows v. Grant's Auto Brokers, Inc.*, 71 Wn.2d 874, 881–82, 431 P.2d 216 (1967) said:

> However complex and intricate plaintiff's problem of proof at the time of trial may be, plaintiff at this stage of the proceeding is entitled to all favorable inferences that may be deduced . . . Mere surmise that plaintiff may not prevail at trial is not a sufficient basis to refuse her her day in court.

Appellants also contend CRO was liable for the resulting injuries and deaths under landlord/tenant and employer/employee theories. We disagree.

The wire in question was not under the control of CRO and it had no option as to the wire's location nor duty to maintain it. The deposition of CRO's foreman indicated the company neither made provisions for, nor provided, television antennas. Thus, we find no error.

The judgment of the Superior Court is reversed as to

---

[8]It is the appreciation of, or the opportunity to appreciate, the peril in an instrumentality or condition, rather than a knowledge of its physical characteristics, that bars a plaintiff of recovery for negligence. *Burk v. Missouri Power & Light Co.*, 420 S.W.2d 274, 278 (Mo. 1967).

PUD and affirmed as to CRO; the cause is remanded for trial.

MUNSON, J., concurs.

GREEN, J. (concurring)—I concur only because this case comes to us on summary judgment.