**FILED**
**MAY 5, 2020**
In the Office of the Clerk of Court
WA State Court of Appeals, Division III

IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| EDWIN WELLS; ANN MINOR; and GEORGE WELLS FAMILY TRUST, | ) ) ) | No. 36602-2-III |
| Appellants, | ) ) | |
| v. | ) ) | PUBLISHED OPINION |
| NESPELEM VALLEY ELECTRIC COOPERATIVE, INC., a Washington corporation, | ) ) ) ) ) | |
| Respondent. | ) | |

PENNELL, C.J. — An electrical fire traced to equipment owned by Nespelem

Valley Electric Cooperative, Inc. (NVEC) destroyed the rural home and other property of

Edwin Wells, Ann Minor, and the George Wells Family Trust (collectively the Plaintiffs).

According to the Plaintiffs, NVEC's electrical pole and equipment were old and cracked,

making them susceptible to electrical leakage and combustion. The Plaintiffs sued NVEC

under theories of general negligence and res ipsa loquitur. The case went to trial. Before a

jury could render judgment, the trial judge issued a directed verdict in favor of NVEC.

We reverse. Because the Plaintiffs presented evidence linking the fire not only to

NVEC's equipment, but also to the utility's neglected maintenance, the case should have

been resolved by a jury. The matter is remanded for trial.

BACKGROUND

The fire at the Plaintiffs' property began around noon on a clear day in late summer. Both Edwin Wells and Ann Minor were home at the time. Mr. Wells first noticed something amiss when a smoke detector began to chirp and wisps of smoke were observed in his home's back bedroom. Mr. Wells stepped outside and saw flames coming from a woodshed on his property. The woodshed was located approximately eight feet from an electrical pole.

The electrical pole belonged to NVEC. It had been installed in the early 1970s, around the time Mr. Wells moved to the property. NVEC supplied all electrical equipment associated with the pole, including a transformer, power line, and meter.[1] Over the decades, Mr. Wells observed NVEC employees arrive "every month and read the meter." Report of Proceedings (Jan. 15, 2019) at 11. However, apart from replacing the meter, Mr. Wells never observed NVEC update any of its equipment.

Mr. Wells tried to extinguish the fire himself, but was unsuccessful. Firefighters arrived on the scene and Mr. Wells and Ms. Minor left thereafter for evaluation of Ms. Minor for possible smoke inhalation. Efforts to save the home were unsuccessful. While Mr. Wells and Ms. Minor were away, representatives from NVEC arrived to disconnect

---

[1] The meter was installed on a separate pole located closer to the home.

the power and take down the electrical pole. After a transformer on the pole cooled down,

NVEC removed the transformer and wires from the property, pursuant to standard

protocol. Other components of the electrical service were left on site.

Several days after the fire, Okanogan County Sheriff's Detective Kreg Sloan

conducted an investigation at the Plaintiffs' property. Detective Sloan ruled out several

possible causes of the fire. The weather had been stable; thus, the fire could not have

been started by lightning. There was no evidence of unauthorized persons or accelerants;

thus, eliminating the possibility of arson. And there was no indication the fire could have

been started by a domestic or wild animal. Rather than any of the foregoing, Detective

Sloan attributed the cause of the fire to the electrical service associated with NVEC's

power pole.

Detective Sloan identified the source of the fire based on burn patterns left on the

electrical pole. The pole's most severe charring was located on the top and bottom. The

middle showed less damage. According to Detective Sloan, this indicated the fire started

at the top of the pole, in the location of the service lines. Then burning embers dropped to

the earth, causing a conflagration on the ground below.

In addition to describing where the fire started, Detective Sloan opined as to how

the fire started. Detective Sloan found a ceramic insulator attached to the top of the power

pole. The insulator was old and cracked. Detective Sloan posited that electricity from the

power line leaked through the insulator to the power pole. Because the wooden pole was also old and cracked, it was ripe for combustion. On the day of the fire, sustained electrical leakage caused smoldering on the wooden pole and then a fire. Once the pole was on fire, flames spread to the rest of the property.[2]

Armed with the information from Detective Sloan's investigation, the Plaintiffs filed suit against NVEC, alleging liability for the fire on grounds of general negligence. The Plaintiffs theorized NVEC breached its duty of care by failing to maintain its power line and equipment. They also claimed relief under a theory of res ipsa loquitur.

The case proceeded to trial. At the close of the Plaintiffs' case, the trial court granted NVEC's motion for a directed verdict. According to the trial court, the Plaintiffs failed to demonstrate NVEC had done anything wrong. Thus, there was insufficient evidence to support liability under a general negligence theory. The trial court also rejected the Plaintiffs' argument for res ipsa loquitur. The court reasoned that fires

---

[2] NVEC disputed Detective Sloan's analysis. According to NVEC, the insulator cracked when the power pole was pulled to the ground. In addition, NVEC proffered the insulator identified by Detective Sloan serviced a neutral line, not an active line (known as a phase wire); thus, it could not have contributed to electrical leakage. Given the applicable standard of review, we credit Detective Sloan's testimony, not the theories proffered by NVEC. *Paetsch v. Spokane Dermatology Clinic, P.S.*, 182 Wn.2d 842, 848, 348 P.3d 389 (2015).

4

can have many causes, several of which are not attributable to negligence. Given this circumstance, the trial court ruled the res ipsa loquitur standard was unmet.

The Plaintiffs appeal.

## ANALYSIS

*Standard of review*

A trial court's entry of a directed verdict is reviewed de novo. *Paetsch v. Spokane Dermatology Clinic, P.S.*, 182 Wn.2d 842, 848, 348 P.3d 369 (2015). All facts are construed in the light most favorable to the nonmoving party. *Id.* A directed verdict will be affirmed only if there is no legally sufficient evidentiary basis for a contrary result. *Chaney v. Providence Health Care*, 176 Wn.2d 727, 732, 295 P.3d 728 (2013).

*General negligence*

A claim of general negligence has four elements: (1) duty, (2) breach, (3) damages, and (4) proximate cause. *Brugh v. Fun-Tastic Rides Co.*, 8 Wn. App. 2d 176, 180, 437 P.3d 751, *review granted in part*, 194 Wn.2d 1001, 451 P.3d 339 (2019). The first element is a question of law, the remaining three involve questions of fact. *Briggs v. Pacificorp*, 120 Wn. App. 319, 322, 85 P.3d 369 (2003).

NVEC does not dispute it owed a duty to the Plaintiffs. Indeed, because of electricity's potential dangers, NVEC, as a supplier of high voltage electricity, owed the

Plaintiffs "the highest degree of care." *Estates of Celiz & Sanchez v. Pub. Util. Dist. No. 1 of Douglas County*, 30 Wn. App. 682, 685, 638 P.2d 588 (1981). Rather than duty, NVEC's dispute focuses on the factual issue of whether the Plaintiffs presented evidence of breach.

Although perhaps thin, the evidence presented at trial was sufficient to support a claim of breach. Testimony from Mr. Wells and Detective Sloan indicates NVEC failed to maintain the power pole and insulator on the Plaintiffs' property. According to Mr. Wells's testimony, the pole and related equipment were approximately 40 years old. Detective Sloan testified the pole and the insulator were both cracked, making them susceptible to electrical leakage and combustion. Representatives from NVEC regularly visited the Plaintiffs' property to read, and at some point replace, the meter. By failing to maintain the electrical pole and related service equipment in good working order, the facts alleged by the Plaintiffs indicate NVEC breached its duty to maintain its electrical systems with "'*the utmost care and prudence.*'" *Keegan v. Grant County Pub. Util. Dist. No. 2*, 34 Wn. App. 274, 279, 661 P.2d 146 (1983) (quoting *Scott v. Pacific Power & Light Co.*, 178 Wash. 647, 650, 35 P.2d 749 (1934)).

Viewing the evidence in a light most favorable to the Plaintiffs, a jury relying on testimony from Mr. Wells and Detective Sloan could find NVEC's failure to maintain its power pole and equipment was negligent conduct that led to the fire on the Plaintiffs'

6

property. The evidence presented at trial was therefore sufficient to overcome NVEC's motion for directed verdict. The trial court's decision to the contrary must be reversed.

*Res ipsa loquitur*

In addition to presenting sufficient evidence of general negligence, the Plaintiffs also produced a viable case of res ipsa loquitur. Res ipsa loquitur is a Latin phrase, roughly meaning "'the thing speaks for itself.'" BLACK'S LAW DICTIONARY 1566 (11th ed. 2019). Res ipsa loquitur is not an independent legal claim; it is instead a tool of circumstantial evidence that allows a plaintiff to proceed with a negligence claim when a defendant's specific act of negligence is unclear. *Pacheco v. Ames*, 149 Wn.2d 431, 436, 69 P.3d 324 (2003). Whether res ipsa loquitur can be applied to a set of facts is a legal issue. *Curtis v. Lein*, 169 Wn.2d 884, 889, 239 P.3d 1078 (2010). The doctrine may be used when:

> (1) the accident or occurrence that caused the plaintiff's injury would not ordinarily happen in the absence of negligence, (2) the instrumentality . . . that caused the plaintiff's injury was in the exclusive control of the defendant, and (3) the plaintiff did not contribute to the accident or occurrence.

*Id*. at 891.

In granting NVEC's motion for directed verdict, the trial court focused on res ipsa loquitur's first element. The court noted that fires are often attributed to causes having

7

nothing to do with negligence. As such, the trial court reasoned res ipsa loquitur did not apply in this context.

The trial judge's assessment of the type of occurrence at the heart of the Plaintiffs' res ipsa loquitur claim was too broad. Application of res ipsa loquitur is fact-specific and focuses on the "manner and circumstances" of a plaintiff's damage or injury. *Zukowsky v. Brown*, 79 Wn.2d 586, 594-95, 488 P.2d 269 (1971). Here, the circumstance at issue was not simply a fire, but a fire originating with an electrical utility's power supply equipment. The *general* fact that fires often happen without any negligence does not address the Plaintiffs' *specific* claim that a fire attributed to electrical service is not something that normally occurs outside of negligence. It is the specific claim that governs application of res ipsa loquitur, not the more abstract occurrence. *See Brugh*, 8 Wn. App. 2d at 185 (looking to plaintiff's specific claim of injury resulting from rollercoaster, rather than general claim of injury during rollercoaster).

The common law has long favored the Plaintiffs' position that res ipsa loquitur permits an inference of negligence for fires attributed to an electrical utility's equipment. *See Collins v. Virginia Power & Elec. Co.*, 204 N.C. 320, 168 S.E. 500, 504 (1933) ("'It is generally held that in cases of injuries sustained from electric appliances on private property the doctrine of res ipsa loquitur applies where it is shown that all the appliances for generating and delivering the electric current are under the control of the

person or company furnishing the same.'") (quoting *Lynch v. Carolina Tel. & Tel. Co.*, 204 N.C. 252, 167 S.E. 847, 850 (1933)); *accord Snow v. Duke Power Co.*, 297 N.C. 591, 256 S.E.2d 227, 233 (1979) (Res ipsa loquitur applies where circumstantial evidence shows the source of the fire was electrical and the defendant "had the exclusive control and management of the electrical current."); *Peterson v. Minnesota Power & Light Co.*, 207 Minn. 387, 391-92, 291 N.W. 705 (1940).

The common law approach is persuasive here. Under Washington law, when a "utility's operation exposes the public to serious accidents or death, the utility is held to the highest degree of care human prudence is equal to." *Keegan*, 34 Wn. App. at 279. The public reasonably expects utilities to deliver electricity in a safe manner, capable of withstanding normal tests of time and exposure to the elements. *See Scott*, 178 Wash. at 656-57 (Utility is expected to account for normal, foreseeable interactions with power lines.). While an unusual weather event or other interference may defeat an inference of negligence under the doctrine of res ipsa loquitur, the mere possibility of a defense does not mean a plaintiff has failed to make out a prima facie case for the jury. *See Pacheco*, 149 Wn.2d at 440-41 (A "plaintiff is not required to 'eliminate with certainty all other possible causes or inferences' in order for res ipsa loquitur to apply.") (quoting *Douglas v. Bussabarger*, 73 Wn.2d 476, 486, 438 P.2d 829(1968)). Instead, the claims and defenses must be resolved by a trier of fact.

NVEC claims res ipsa loquitur's second element is unmet because the power pole on the Plaintiffs' property was not in its exclusive control. Similar to its claim against res ipsa's first element, NVEC points out the power pole was subject to the elements and other natural forces. According to NVEC, a bird, cat, or wild animal could come into contact with its equipment and cause a disruption or fire.

NVEC's view of res ipsa loquitur is too rigid. The issue of exclusive control serves to narrow the defendant as the source of a plaintiff's injuries, as opposed to some other party. *Zukowsky*, 79 Wn.2d at 595. Generally, an electrical company will be held responsible for fires originating from its equipment, even if the equipment is placed on private property. *Collins*, 168 S.E. at 503-04. Presumptive responsibility is defeated only when the evidence shows a third party has interfered with a power company's equipment. *See, e.g.*, *Hippe v. Duluth Brewing & Malting Co.*, 240 Minn. 100, 105-06, 59 N.W.2d 665 (1953) (Res ipsa loquitur inapplicable when evidence was that plaintiff's son had exerted control over the power company's transformer.); *Arkansas Power & Light Co. v. Butterworth*, 222 Ark. 67, 70-71, 258 S.W. 36 (1953) (Res ipsa loquitur inapplicable because only a portion of the instrumentality that started the fire was under the defendant's control.).

Here, there was no evidence presented at trial of any outside interference with NVEC's power equipment. Detective Sloan testified he did not observe any indication of

tampering by either people or animals. No other witness indicated anything to the contrary. Because the wires, insulator, and other devices on the Plaintiffs' property "were all furnished and installed, inspected, etc." by NVEC, the utility is deemed in exclusive control of its equipment for purposes of res ipsa loquitur. *Collins*, 168 S.E. at 504.

NVEC does not dispute res ipsa's third element. There was no evidence the Plaintiffs contributed to the fire that destroyed their residence and other property. Accordingly, the Plaintiffs have established a prima facie case for all three components of res ipsa loquitur. As a result, a trier of fact must decide the final merits of the Plaintiffs' claims.

## CONCLUSION

The order granting NVEC's motion for directed verdict is reversed. This matter is remanded for trial.

_____, C.J.
Pennell, C.J.

WE CONCUR:

_____, J.                _____, J.
Fearing, J.                                 Lawrence-Berrey, J.

11