**NOTICE:   SLIP OPINION**
**(not the court's final written decision)**

The opinion that begins on the next page is a slip opinion.  Slip opinions are the written opinions that are originally filed by the court.

A slip opinion is not necessarily the court's final written decision.  Slip opinions can be changed by subsequent court orders.  For example, a court may issue an order making substantive changes to a slip opinion or publishing for precedential purposes a previously "unpublished" opinion.  Additionally, nonsubstantive edits (for style, grammar, citation, format, punctuation, etc.) are made before the opinions that have precedential value are published in the official reports of court decisions: the Washington Reports 2d and the Washington Appellate Reports.  An opinion in the official reports replaces the slip opinion as the official opinion of the court.

**The slip opinion that begins on the next page is for a published opinion, and it has since been revised for publication in the printed official reports.**  The official text of the court's opinion is found in the advance sheets and the bound volumes of the official reports.  Also, an electronic version (intended to mirror the language found in the official reports) of the revised opinion can be found, free of charge, at this website: https://www.lexisnexis.com/clients/wareports.

For more information about precedential (published) opinions, nonprecedential (unpublished) opinions, slip opinions, and the official reports, see https://www.courts.wa.gov/opinions and the information that is linked there.

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| WALTER FAMILY GRAIN GROWERS, INC., | ) | No.  37915-9-III |
| | ) | |
| Appellant, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| FOREMOST PUMP & WELL SERVICES, LLC, | ) | PUBLISHED OPINION |
| | ) | |
| Defendant, | ) | |
| | ) | |
| INLAND POWER & LIGHT CO.; AND MITCHELL, LWEIS & STAVER CO., | ) | |
| | ) | |
| Respondents. | ) | |

STAAB, J. — Walter Family Grain Growers (Walter) installed new irrigation and

power equipment on its farm that failed, resulting in lost crops.  In addition to filing suit

against the installation companies, Walter sued Inland Power & Light Company (Inland)

for negligence, asserting that excessive voltage service destroyed the equipment.  The

trial court dismissed Walter's negligence claims against Inland, finding Walter's

evidence of breach of duty insufficient to survive summary judgment.  We reverse,

holding that industry standards and regulations alone do not set a utility's duty of care in

No. 37915-9-III
*Walter Family Growers, Inc. v. Foremost Pump, LLC*

a tort, and Walter's evidence is sufficient to raise a material issue of fact on whether

Inland breached its duty of care.

BACKGROUND

Since Walter's negligence claim was dismissed on summary judgment, the

following facts are set forth in a light most favorable to Walter.

Walter Farms leased property in Lincoln County.  Inland provided 3 phase 480-

volt power to the Walter property from April 2012 to 2014.[1]  Inland tries to push power at

480 volts plus or minus five percent per American National Standards Institute (ANSI)

recommendations.  Low voltage is a class of nominal system voltages of 1,000 volts or

less.  Nominal system voltage in a low voltage system is 480 on a three-wire three-phase

system.  However, nominal utilization voltage is 460 volts on a 480 system.

Power companies maintain service power at 480 volts that attenuates due to

customer use and bleeds off to a level of 460 volts at customer utilization points, which is

why equipment rated at 460 volts is recommended.  Maximum service voltage is 504

volts.  ANSI standards allow for 10 percent power fluctuations for temporary conditions.

Inland admits that spikes above 506 can happen, and it is not uncommon for a spike to

---

[1] "Three-phase three-wire systems are systems in which only the three-phase conductors are carried out from the source for connection of loads.  The source may be derived from any type of three-phase transformer connection, grounded or ungrounded. Three-phase four-wire systems are systems in which a grounded neutral conductor is also carried out from the source for connection of loads."  Clerk's Papers (CP) at 175 (American National Standards Institute (ANSI)).

No. 37915-9-III
*Walter Family Growers, Inc. v. Foremost Pump, LLC*

occur for 2/60th of a second. Any spike longer than that or higher than 600 volts,

Inland's system would need to be shut off for safety but they would not know to do so.

Prior to 2019, Inland could not monitor or record the voltage in its electrical lines

and relied on customers to alert them to problems such as something burned. Lightning

arrestors at the substations and poles prevent transmission of huge voltages by blowing

out. Inland's transformer is 10 feet from Walter's service meter. Inland rebooted the

Walter service meter in April 2013. Colley Walter of Walter Farms did not remember

any power problems prior to 2015.

In 2014, Walter contracted with Foremost Pump & Well Services LLC (Foremost)

to install a used irrigation pump and new variable frequency pump drive (VFD). The

pump was 14 years old, but a pump can be expected to function for 60 years. Walter then

applied for an electrical subsidy through Inland for its upgraded VFD equipment. The

Foremost contract called for a 300 horsepower pump using incoming phase 3 power of

480 volts and an attached VFD pump control system compatible with the pump to

provide constant water pressure. A VFD converts power and emits it back out to the

pump motor in pulses. It has an internal fault mechanism that alarms and shuts the drive

down when there is too much voltage so that the VFD does not burn out. The VFD was

rated for 3 phase 460 volts nominal voltage and can handle up to 485 volts.

The VFD creates "noise" known as harmonic current and sends this current back

up the power grid. To prevent this from happening, most power companies require a

No. 37915-9-III
*Walter Family Growers, Inc. v. Foremost Pump, LLC*

harmonic filter to be installed with a VFD. The VFD that Walter purchased was ordered

with a harmonic filter in it. The harmonic filter built into the VFD adds 8 to 12 volts to

the system.[2]

Inland turned off the service in May 2014, while Foremost performed the pump

installation. At the same time, Jim Klopmeyer of Mitchell, Lewis & Staver (MLS)

installed the VFD, electrical control relay, and other components connected to the VFD

system. The relay is separate from the VFD. The relay has a threshold for excess

voltage. The record does not contain voltage ratings for the control relay or other

components except that the relay feeds 120 volts into the harmonic filter. There is no

fuse or trip between the relay and the service to prevent excess voltage from burning the

relay. If the relay burns, power proceeds directly into the VFD and pump and they would

burn and fail after a short period. In summary, power feeds through the electrical system

in the following order:

1. Inland South Creston substation.
2. Inland transformer.
3. Inland service entrance and breaker.
4. MLS control power transformer.
5. MLS control relay.
6. Foremost VFD and harmonic filter.

---

[2] In its reply brief at summary judgment, Inland asserted that unlike most power companies, it did not require the harmonic filter on the VFD, but did not cite to any part of the record to support this factual claim. On reconsideration, Walter submitted the declaration of Roy Jensen, owner of Foremost, who declared that Inland required the harmonic filter. Inland has not repeated this claim on appeal.

No. 37915-9-III
*Walter Family Growers, Inc. v. Foremost Pump, LLC*

7.  Water pump motor.

A year after it was installed, Walter began experiencing electrical problems with the pump. The VFD exhibited repeated error codes indicating "'DC Bus Overvoltage'" which caused the pump to shut down and deprive the crops of water. Clerk's Papers (CP) at 97. The first error code occurred on May 5, 2015. There was no evidence of moisture damage or burn damage to the pump. The pump was unlikely to fail from age. There is nothing in the record suggesting other Inland customers experienced problems at the same time or weather conditions that could cause temporary power service fluctuations.

On May 14, 2015, Walter complained to Foremost and MLS, who investigated the problem. On May 18, 2015, James Klopmeyer from MLS drove out to Walter's site. He pulled up the VFD alarm log and noticed several "trips" on the DC bus over-voltage alarm. He went through the programming parameter settings and visually inspected the unit and wiring. He then used a fluke meter[3] to measure incoming voltage on the input terminals of the VFD "downstream" from the harmonic filter, which was turned off at the time. The measure was at 496 volts. His opinion was that the power was too high for the unit, and he recommended that Walter contact Inland. Once a VFD shuts down, it must be manually reset, and the breaker must be turned on and off. Klopmeyer got the system

---

[3] A fluke meter is a digital voltage measuring device with a positive and negative probe that measures between phase-to-phase or to ground and tells you the voltage. CP at 209.

5

No. 37915-9-III
*Walter Family Growers, Inc. v. Foremost Pump, LLC*

up and running and watched the power levels for two hours. With the harmonic filter active, his measurements remained at 496 volts.

Colley Walter from Walter called Inland. They came out the same day and indicated that the voltage was "good on their end." CP at 283. Six hours later, the VFD indicated another DC fault code.

On May 19, 2015, Colley Walter called Inland and Foremost. Mr. Jenson of Foremost responded and personally checked the Walter equipment before the Memorial Day weekend while the Inland employees were on site. He did not see any problems with the relay himself, but based on comments by James Klopmeyer, he thought that a "fluttering relay" could cause the harmonic filter to create high voltages. CP at 249. On May 21, 2015, Inland placed a remote voltage meter on the Walter property. The next day, the VFD fault coded again. Inland employee Ver Don Nelson saw spike measurements of 510 volts once or twice and expects that those were taken from the transformer next to the Walter breaker. No voltage measurements were taken from the substation that feeds the Walter property.

The following Saturday, May 23, 2015, Mr. Jenson returned to the Walter property and personally measured voltage of 498 volts, "about" 500 volts, coming in from the service. He also observed voltage readings on the VFD panel. Inland employee "Mike" arrived at the same time and measured the same voltage amount. Mike turned the power

6

No. 37915-9-III
*Walter Family Growers, Inc. v. Foremost Pump, LLC*

down.  The pump was turned on and ran.  It shut down again due to another DC fault on May 24, Memorial Day weekend.

The next Thursday after Memorial Day, May 26, Mr. Jenson met with Ver Don Nelson of Inland, Mr. Jessup, and Mr. Walter at the Walter property.  They saw voltage measurements of 470 to 475 approximately measured on the breaker side.  Inland denied anything was wrong and "bumped up" the voltage close to 480.  Mr. Nelson did not do this from the office.  He increased the voltage by calling Mike Andriola, the Inland engineer.  Ver Don Nelson did not say when he did this, but Mr. Walter and Mr. Jenson's depositions evidence establish the date.  The VFD shut down again for a DC fault code that night.

On May 27, during his second visit, Mr. Klopmeyer from MLS discovered that Walter's control relay was burned.  He testified that a relay is designed to burn up when there is elevated voltage.  There were no loose connections.  He removed the damaged relay and replaced it with a new one.  He re-measured incoming voltage at 482.  In his opinion, elevated voltage caused the relay to burn at some earlier time.  Mr. Klopmeyer admitted at deposition that the VFD could have been defective but did not think that the relay was defective.

The pump motor failed again in August 2015.  It took a week to replace the motor, during which crops died due to 100-degree weather.  Foremost employees discovered that the pump had a grounding condition because the ground wires were burnt.  Foremost

7

No. 37915-9-III
*Walter Family Growers, Inc. v. Foremost Pump, LLC*

employees attributed the burnt wires to a high voltage surge. Mr. Jenson speculated that it might have been a relay failure or lightning.

Walter sued Foremost and MLS for defective equipment installation. Walter sued Inland for negligently participating in "repairing the irrigation equipment." CP at 61. MLS alleged that Inland provided excessive service voltage.

Following discovery, Inland moved for summary judgment dismissal, arguing that Walter's evidence was insufficient to support the elements of negligence. In its reply briefing, Inland argued for the first time that it did not require the harmonic filter, that it never turned down the power, and that the VFD was incorrectly rated at 460 volts. The summary judgment hearing took place on October 6, 2020. Walter indicated settlement with Foremost and MLS that day. The court granted summary judgment dismissal in favor of Inland. Walter's motion for reconsideration was denied. Walter appeals.

ANALYSIS

Walter contends that the trial court erred in dismissing its negligence claim on summary judgment.

1. NEGLIGENCE

To prove negligence, a plaintiff must show (1) the existence of a duty to the plaintiff, (2) a breach of that duty, (3) a resulting injury, and (4) the breach is a proximate cause of the injury. *Hurley v. Port Blakely Tree Farms LP*, 182 Wn. App. 753, 773, 332 P.3d 469 (2014) (citing *Crowe v. Gaston*, 134 Wn.2d 509, 514, 951 P.2d 1118 (1998)).

8

No. 37915-9-III
*Walter Family Growers, Inc. v. Foremost Pump, LLC*

"The existence of a duty is a question of law, while breach of duty and proximate cause are generally questions of fact for the jury." *Briggs v. Pacificorp*, 120 Wn. App. 319, 322, 85 P.3d 369 (2003) (citing *Hertog v. City of Seattle*, 138 Wn.2d 265, 275, 979 P.2d 400 (1999)). Duty has three facets: (1) who owes the duty, (2) to whom, and (3) what is the standard of care. *Gall v. McDonald Indus.*, 84 Wn. App. 194, 202, 926 P.2d 934 (1996). "Once it is determined that a legal duty exists, it is generally the jury's function to decide the foreseeable range of danger, thus limiting the scope of that duty." *Briggs*, 120 Wn. App. at 322.

    2. STANDARD OF REVIEW

Summary judgment rulings are reviewed de novo, undertaking the same inquiry as the trial court. *Hertog*, 138 Wn.2d at 275. Summary judgment is appropriate when the record demonstrates no genuine issue of material fact. *Id*.; CR 56(c). Facts and reasonable inferences are made in the light most favorable to the nonmoving party. *Id*. For the purpose of negligence, breach and proximate cause may be determined as a matter of law where reasonable minds could not differ. *Id*. Once a moving party establishes this initial burden, the nonmoving party must rebut the moving party's contentions by setting forth specific facts showing there is a genuine issue for trial. *Seven Gables Corp. v. MGM/UA Entm't Co.*, 106 Wn.2d 1, 13, 721 P.2d 1 (1986)*;* CR 56(e).

A plaintiff must establish an issue of material fact as to each element of negligence to defeat a motion for summary judgment dismissal. *Martini v. Post*, 178 Wn. App. 153,

9

No. 37915-9-III
*Walter Family Growers, Inc. v. Foremost Pump, LLC*

164, 313 P.3d 473 (2013). The plaintiff need not prove causation to an absolute

certainty. *Gardner v. Seymour*, 27 Wn.2d 802, 808, 180 P.2d 564 (1947). It is sufficient

if the evidence leads a reasonable person to conclude, more probably than not, that harm

happened in such a way that the defendant should be held liable. *Id.* Contributory

negligence may also come into play as a question of fact for a jury. *Amant v. Pac. Power*

*& Light Co.*, 10 Wn. App. 785, 794, 520 P.2d 181 (1974), *aff'd*, 84 Wn.2d 872, 529 P.2d

829 (1975).

     3.  EXPERT WITNESSES

As a preliminary matter, we address Inland's argument that Walter cannot prove

negligence because evidence of the standard of care and breach will require expert

testimony, and Walter has failed to disclose any expert witnesses. The evidence relied on

by Walter to counter Inland's motion on summary judgment included the deposition and

declaration testimony of Roy Jensen, the owner of Foremost, and James Klopmeyer, a

technician from MLS. These witnesses testified as both factual witnesses and experts on

how the pumps work and the cause of Walter's electrical issues. Inland did not move to

strike the testimony of these witnesses as unqualified under ER 702, and the trial court

made no such evidentiary rulings.[4] Therefore, the evidence is before this court, and we

---

    [4] For purposes of our decision, we do not consider the subsequent declaration of
Roy Jenson submitted by Walter on reconsideration.

10

No. 37915-9-III
*Walter Family Growers, Inc. v. Foremost Pump, LLC*

consider it to determine whether Walter's evidence is sufficient to carry its burden past

summary judgment.

    4.  DUTY OF CARE AND THE REGULATION OF ELECTRICAL UTILITIES

The parties dispute the nature of Inland's duty to Walter. Inland argues that the

standard of care is set by ANSI standards adopted in the Washington Administrative

Code (WAC). Walter argues that the standard of care is the same as every other

negligence action: that of a reasonably prudent person under the circumstances presented.

This issue was decided by the Supreme Court in *Scott v. Pacific Power & Light

Co.*, 178 Wash. 647, 35 P.2d 749 (1934). There the court held that, "The care to be

exercised by an electric company with respect to its wires is such as a reasonably careful

and prudent person, having in view the dangers to be avoided and the likelihood of injury

therefrom, would exercise under the circumstances in, order to prevent injury." *Id*. at

649. The degree of care will vary depending on the foreseeable danger presented by the

utility's activity. *Id*. at 649-50. For example, high voltage cases in excess of 5,000 volts

call for the highest degree of care, while lesser nonlethal voltage found in homes with

120-volt service requires only ordinary care. *Brashear v. Puget Sound Power & Light

Co.*, 100 Wn.2d 204, 210-11, 667 P.2d 78 (1983) (cable TV installer electrocuted by 120-

volt lamp on power pole and reviewing court upheld jury verdict that utility violated

ordinary duty of care to warn but installer also contributorily negligent).

No. 37915-9-III
*Walter Family Growers, Inc. v. Foremost Pump, LLC*

This court reaffirmed the standard established in *Scott* in *Keegan v. Grant County Public Utility District No. 2*, 34 Wn. App. 274, 280, 661 P.2d 146 (1983).  In *Keegan*, the plaintiffs alleged the electric utility was negligent in maintaining trees under power lines near their home.  When the wind blew a power line down, it started a fire that destroyed the plaintiff's home.  The *Keegan* court acknowledged that, "One of the factors to be considered in determining whether a utility has satisfied its duty of care is the practical operation of the utility."  *Id*. at 280.  The extent of evidence relating to a utility company's practical operations is commensurate with the standard of care applied under the circumstances.  *Id*. at 281.  "If the danger posed to the public is minimal, then the utility should be afforded considerable latitude in presenting evidence of its practical operation."  *Id*.

Here, a 480-volt service is low voltage and of minimal danger.  Therefore ordinary negligence applies instead of the heightened negligence advocated by Walter.  In addition to the low voltage, the specific circumstances presented by this case concern damage to equipment.  While Walter argues that these lines could cause death or serious injury under different circumstances, the standard is what a reasonably prudent person would do under these circumstances.

Inland argues that the standard of care is set by applicable regulations and points to the declaration of its expert in support of its argument.  Eric Jackson provided a declaration simply stating that utility companies are "governed by the American National

12

No. 37915-9-III
*Walter Family Growers, Inc. v. Foremost Pump, LLC*

Standard Institute and Institute of Electrical and Electronics Engineers (ANSI/IEEE) standards." CP at 104. Other than citing Mr. Jackson's declaration and the regulations themselves, Inland does not cite any authority to support its position that the standard of care is set by the regulations. Notably, since 1986 Washington has eliminated negligence per se for the violation of a regulation but allows the violation of a regulation to be considered as evidence of negligence. *See* RCW 5.40.050 ("A breach of a duty imposed by statute, ordinance, or administrative rule shall not be considered negligence per se, but may be considered by the trier of fact as evidence of negligence."). It stands to reason that "compliance with applicable statutes and regulations may be used to show a municipality met its duty of care." *Fite v. Mudd*, 19 Wn. App. 2d 917, 932, 498 P.3d 538 (2021).

The cases cited by the parties support this conclusion. In *Hurley*, decided in 2014, a logging company argued that compliance with regulations and industry standards shielded them from liability for negligence as a matter of law where logging on steep slopes caused landslides. 182 Wn. App. at 773-75. The court held that compliance with regulations and industry standards does not per se excuse a defendant from a claim of negligence or entitle a defendant to summary judgment. *Id*. However, since there was no dispute of material fact, summary dismissal was granted where the logging company was found to have complied with its duty of reasonable care because the geology and hydrology of landslides was outside its knowledge and expertise. *Id*. *Hurley* is

13

No. 37915-9-III
*Walter Family Growers, Inc. v. Foremost Pump, LLC*

distinguishable because while loggers are not expected to understand geology, Inland is expected to understand electricity and take safety precautions as an electric utility.

In *Celiz*, the court applied the highest degree of care due to the power company's placement of high-voltage electrical wires. *Celiz & Sanchez' Estates v. Pub. Util. Dist. No. 1 of Douglas County*, 30 Wn. App. 682, 685, 638 P.2d 588 (1981) (summary judgment reversed in part where dispute of material fact existed as to whether utility should have anticipated human contact with low hanging wires charged with 13,200 volts causing death). The utility argued that compliance with former WAC 296-44-316 establishing wire height clearances was prima facie evidence of full compliance with the heightened duty of care identified by the court. *Celiz & Sanchez' Estates*, 30 Wn. App. at 686. The court held that "compliance with electrical standards set forth in the Washington Administrative Code does not mean a lack of negligence; rather, it means compliance with our State's minimal requirements," and such compliance merely precludes a showing of per se negligence. *Id.*; s*ee also Crane & Crane, Inc. v. C&D Elec., Inc.*, 37 Wn. App. 560, 567, 683 P.2d 1103 (1984) (Violation of the National Electrical Code is not negligence per se.). "The duty of care exercised by an electrical power company is more than mere mechanical skill in compliance with minimal State requirements; it also includes an element of foresight." *Celiz & Sanchez' Estates*, 30 Wn. App. at 686.

14

No. 37915-9-III
*Walter Family Growers, Inc. v. Foremost Pump, LLC*

While compliance with applicable regulations is relevant to the question of negligence; it is not dispositive. A simple statement indicating that a party has complied with industry customs is not necessarily determinative of negligence where the duty of reasonable care is distinct from such customs. *Ranger Ins. Co. v. Pierce County*, 164 Wn.2d 545, 553, 192 P.3d 886 (2008) (duty of care breached despite compliance with industry custom). Whether or not reasonable care has been used is generally for a jury. *Scott*, 178 Wash. at 651.

    5.  EVIDENCE IN SUPPORT OF BREACH OF DUTY

Both parties argue the quality of evidence supporting a breach of duty. Walter argues that circumstantial evidence establishes the breach effectively, if not explicitly. Inland argues that expert testimony as to breach is required, and there is no evidence that Inland violated the regulations or its duty.

Circumstantial evidence of negligence may be presented as long as it affords room for "'reasonable minds to conclude that there is a greater probability that the conduct relied upon was the [cause in fact] of the injury than there is that it was not.'" *Martini*, 178 Wn. App. at 165 (alteration in original) (internal quotation marks omitted) (quoting *Hernandez v. W. Farmers Ass'n*, 76 Wn.2d 422, 426, 456 P.2d 1020 (1969)).

As Walter points out, there is no direct evidence of the line voltage except when specifically measured because Inland did not monitor or record voltage in its lines. Walter argues that the burns to their control relay could not have occurred absent

15

No. 37915-9-III
*Walter Family Growers, Inc. v. Foremost Pump, LLC*

negligence by Inland in providing excessive current from its service. Walter settled with Foremost and MLS without admission of liability, and the trial court never reached the issue of whether their equipment installation caused Walter's pump injury. However, the equipment installed by Foremost and MLS was downstream from Walter's burned control relay, which was fed by the service in the exclusive control of Inland. Walter asserts that its equipment was adequately rated for the electrical service ordered and did not contribute to the incident. Inland disputes this, but the record supports that the 460-volt pump was properly rated for a 480-volt service given industry standards. Finally, much like in *Wells v. Nespelem Valley Elec. Coop., Inc.*, 13 Wn. App. 2d 148, 157, 462 P.3d 855, *review denied*, 196 Wn.2d 1027, 476 P.3d 576 (2020), nothing in the record supports the presence of outside factors such as weather justifying power spikes outside the five percent range.

Inland argues that there is no evidence of breach because there is no evidence that it violated applicable regulations. However, as we noted above, evidence of compliance is relevant to breach but not dispositive. Inland's evidence of compliance can be used to counter Walter's circumstantial evidence of a breach, but on summary judgment, it simply creates a material issue of fact.

Even if we were to consider Inland's evidence of compliance, it is insufficient for a court to find lack of breach as a matter of law. While Inland argues that there is no evidence that the power supplied by Inland exceeded regulation standards, it bases this

16

No. 37915-9-III
*Walter Family Growers, Inc. v. Foremost Pump, LLC*

assertion on the application of exceptions to the standards without demonstrating that exceptions applied under the circumstances in this case.

For instance, Inland argues that WAC 480-100-373 and ANSI industry standards allow electrical service to fluctuate within five percent of the nominal 480-volt range, with temporary fluctuations up to 10 percent under certain circumstances. WAC 480-100-373 sets regulations for standard voltage and permissible variation. "Electric utilities must maintain the voltage on their distribution system reasonably constant and any allowed variation must be a gradual change in voltage as a result of normal changes in load." WAC 480-100-373(2). "Voltage variations may not be more than five percent above or below the standard voltage adopted; and (b) [t]he total voltage variation from minimum to maximum may not exceed eight percent of the standard voltage." WAC 480-100-373 (2)(a)(b). This regulation provides for exceptions when voltage variations are "caused by the action of the elements" or due to operation of a customer's equipment start up or emergencies. WAC 480-100-373(3).

Despite conceding two occasions where voltage exceeded the five percent range, and without providing evidence of circumstances required to justify exceptional voltage fluctuations, Inland argues that it operated within industry regulations and standards and thus complied with its duty of care.

Inland also argues that the exception available to rural power utilities applies. Under WAC 480-100-373(2)(b):

17

No. 37915-9-III
*Walter Family Growers, Inc. v. Foremost Pump, LLC*

> A utility may also permit greater voltage variations in an area where the revenues received do not justify close voltage regulation. In such cases, electric utilities must provide the best voltage regulation that is economically and technically practicable under the circumstances.

This exception is only available under certain circumstances. Inland fails to point to any evidence demonstrating that the specific circumstances existed in this case to support this exception. Inland additionally fails to provide any information regarding economic and technical practicability in the service area where Walter is located.

In *Kaech v. Lewis County Public Utility District No. 1*, the reviewing court upheld the jury verdict that the utility violated ordinary care when it exposed cattle to stray low voltage but reversed the damage amount. 106 Wn. App. 260, 270-72, 23 P.3d 529 (2001). Lay evidence showed that the plaintiff detected stray voltage in his barn and complained to the utility. *Id.* at 271-72. The utility investigated the claim and discovered a possible insulator problem. *Id.* at 272. One utility employee offered to replace the insulators, but another told the plaintiff that there was no stray voltage. *Id.* Two years after the initial complaint, the Public Utility District (PUD) replaced insulators, finally solving the stray voltage problem. The evidence was sufficient to support a finding that the PUD departed from the standard of care and negligently responded to the plaintiff's repeated complaints. *Id.* at 271-72.

The present case is similar to *Kaech* in that Walter complained to Inland of high voltage, 496 volts, measured on his farm on several occasions. On two occasions, Inland

18

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

No. 37915-9-III
*Walter Family Growers, Inc. v. Foremost Pump, LLC*

employees measured power in excess of 504 volts, outside the five percent standard

variance. Taking the evidence in the light most favorable to Walter, one utility employee

turned the power down to mitigate the problem, and then another employee turned the

power up a few days later and denied the existence of any problem. In addition, Walter's

evidence raises a material issue of fact as to whether Inland had notice of excessive

voltage and a potential problem, which in turn impacts the foreseeability of the damage

and the scope of Inland's duty. This issue should not have been determined on summary

judgment.

6. PROXIMATE CAUSE

Finally, Inland argues that Walter has failed to present evidence sufficient to raise

a material issue of fact on proximate cause. Inland's theory is that Walter's evidence is

insufficient because it fails to rule out other reasons for the damage to its irrigation

system. Inland did not raise lack of evidence on proximate cause as a basis for its motion

on summary judgment, and the trial court did not rule on this element of negligence. In

its reply brief on summary judgment and again on appeal, Inland argues that Walter's

pump was incorrectly rated for 480-volt power. However, as Walter points out, the

regulations suggest an explanation for the difference, and Inland does not point to any

evidence to support its theory of causation. Walter's claims against Foremost and MLS

were resolved shortly before summary judgment, but there may be issues of contributory

19

No. 37915-9-III
*Walter Family Growers, Inc. v. Foremost Pump, LLC*

negligence that were not raised before the superior court that also require a jury for resolution.

Because this issue was not raised below, we decline to consider it on appeal.

7. CONCLUSION

Inland owed Walter a duty of ordinary care to supply low voltage electrical power to Walter's irrigation equipment. While compliance with ANSI standards and WAC regulations is evidence of compliance with the standard of care, it is not solely dispositive. When viewed in a light most favorable to Walter, the evidence is sufficient to raise a material issue of fact as to breach of duty.

_____
Staab, J.

WE CONCUR:

_____
Siddoway, C.J.

_____
Fearing, J.

20