# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION  II

| | |
|---|---|
| CLALLAM TITLE AND ESCROW, | No.  57169-2-II |
| Interpleader Plaintiff, | |
| v. | |
| PATRICIA ANNE PRONESTI, | |
| Appellant, | UNPUBLISHED OPINION |
| KYLE FRITZ, | |
| Respondent. | |

LEE, J. — Clallam Title and Escrow (Clallam Title) filed an interpleader action against Patricia A. Pronesti and Kyle Fritz.  Pronesti appeals the trial court's order directing that interpleader funds be released to Fritz following a directed verdict for Fritz.  Pronesti argues that the trial court erred by granting a directed verdict for Fritz.  Both Pronesti and Fritz request attorney fees on appeal.

We hold that the trial court erred by granting a directed verdict for Fritz.  Accordingly, we reverse the trial court's order directing that interpleader funds be released to Fritz and remand for a new trial.  We also deny Pronesti's and Fritz's requests for attorney fees on appeal.

FACTS

A.    PURCHASE AND SALE AGREEMENT AND RESCISSION

Pronesti and Fritz entered into a one-page purchase and sale agreement (PSA) wherein Fritz agreed to purchase a piece of property from Pronesti.  The PSA required Fritz to pay a $5,000.00 earnest money deposit.  The PSA also included a rescission clause stating that Fritz

> shall have 72 hours from the date of receipt of a current Title Report to determine its suitability to Buyer, at Buyer[']s sole discretion.  If prior to the end of the 72 hour Period, Buyer notifies Seller that the Title is not suitable to Buyer, Earnest Money shall be returned to Buyer and this transaction shall be rescinded.

Clerk's Papers at 121.  The PSA provided that defaulting on the agreement would result in forfeiture of the earnest money.  The PSA listed Clallam Title as the closing agent for the transaction and stated that Pronesti authorized the closing agent to apply for title insurance paid for by Pronesti.

On the same day that Pronesti and Fritz entered into the PSA, Pronesti provided Fritz with a title report from Olympic Title.  The Olympic Title report that Pronesti provided was not prepared for Fritz, but for a third party who was not a part of the transaction between Pronesti and Fritz.

Fritz deposited the $5,000.00 earnest money the day after signing the PSA.  Several days later, Clallam Title provided a title report to Fritz's representative and stated that it would also provide the title report to Fritz.  Fritz emailed Pronesti and rescinded his offer within 72 hours of receiving the title report from Clallam Title, but more than 72 hours after receiving the title report from Olympic Title.

B.      INTERPLEADER ACTION

Clallam Title filed an interpleader complaint against Pronesti and Fritz to resolve the conflicting claims to the earnest money.  The case proceeded to a bench trial.

Fritz's attorney submitted a trial memorandum prior to the bench trial.  Pronesti, who appeared pro se, did not submit a trial memorandum.  Pronesti asked at the beginning of the trial if the trial court wanted her to present her evidence.  The trial court stated that they would wait until later for Pronesti to present her evidence, which would be presented "in the ordinary course." Verbatim Rep. of Proc. (VRP) at 7.

The trial court invited Fritz to testify first.  Fritz testified that he rescinded his offer based on the title report he received from Clallam Title.  The trial court allowed Pronesti to cross-examine Fritz, and Fritz testified on cross-examination that he did not want to use the title report from Olympic Title and did not look at the report from Olympic Title.  During Fritz's testimony, the trial court admitted as evidence the PSA and several emails between the parties.[1]

After Fritz's testimony, Fritz's attorney orally moved for a directed verdict "based on the exhibits" because they believed "there's not much at issue here."  VRP at 27.  The trial court stated that there was nothing at issue and it was a simple case.  Pronesti attempted to speak to the trial

---

[1] The admitted emails include: (1) Pronesti's email to Fritz on November 4 with the title report from Olympic Title; (2) an email from Clallam Title on November 8, stating that the company had received Fritz's earnest money and listing the next step of the process as completing a title report; (3) an email from Clallam Title confirming that Fritz's real estate broker or lender received a title report from Clallam Title on November 9; and (4) Fritz's email to Pronesti rescinding his offer on November 11.

court and said "I would like to. . .," but the trial court interrupted Pronesti and told her to not interrupt. VRP at 28.

The trial court granted a directed verdict in favor of Fritz. The trial court ruled that because Fritz rescinded his offer within 72 hours of receiving the title report from Clallam Title, he was entitled to recover his earnest money.

Pronesti asked the trial court if she had the right to call witnesses, to which the trial court responded that nothing could be gained by her calling witnesses and that it did not need her evidence to make a decision in the case. The trial court entered an order directing that the earnest money be released to Fritz.

Pronesti moved for reconsideration, asserting an irregularity in the proceedings, a ruling contrary to law because the trial court did not allow her to present her side of the case, and insufficient evidence to justify the trial court's verdict against her. The trial court denied Pronesti's motion for reconsideration.

Pronesti appeals.

ANALYSIS

A.    DIRECTED VERDICT

Pronesti argues that the trial court erred by granting a directed verdict for Fritz. We agree.

Directed verdicts are governed by CR 50, which refers to directed verdicts as judgments as a matter of law. *Mancini v. City of Tacoma*, 196 Wn.2d 864, 876-77, 479 P.3d 656 (2021); *Guijosa v. Wal-Mart Stores, Inc.*, 144 Wn.2d 907, 915, 32 P.3d 250 (2001); *see* CR 50. We review a trial court's grant of a directed verdict de novo. *Paetsch v. Spokane Dermatology Clinic, P.S.*, 182

Wn.2d 842, 848, 348 P.3d 389 (2015). We construe all facts in the light most favorable to the

nonmoving party (here, Pronesti). *Id.*

CR 50(a)(1) provides that

[i]f, during a trial by jury, a party has been fully heard with respect to an issue and there is no legally sufficient evidentiary basis for a reasonable jury to find or have found for that party with respect to that issue, the court may grant a motion for judgment as a matter of law against the party on any claim, counterclaim, cross claim, or third party claim that cannot under the controlling law be maintained without a favorable finding on that issue. Such a motion shall specify the judgment sought and the law and the facts on which the moving party is entitled to the judgment.

Here, the trial court granted the directed verdict at a bench trial, but CR 50's plain language

limits the rule's applicability to jury trials. Further, CR 50(a)(1) requires motions for directed

verdicts to specify the law and facts upon which the moving party is entitled to judgment, but here,

Fritz's oral motion vaguely referred to "the exhibits" and asserted that there was "not much at issue

here." VRP at 27. Additionally, CR 50(a)(1) requires that the party against whom judgment is

against be fully heard. But the trial court granted a directed verdict against Pronesti without

providing Pronesti any opportunity at trial to testify, argue the case, or present witnesses or

evidence of her own, despite her multiple attempts to do so. Because Pronesti was not "fully heard

with respect to [the] issue," the trial court erred by granting a directed verdict against Pronesti and

in favor of Fritz after only allowing Fritz the opportunity to present his case. CR 50(a)(1); *Mancini*,

196 Wn.2d at 876.[2]

---

[2] We note that for bench trials, motions for directed verdicts can sometimes be construed as motions for involuntary dismissal under CR 41(b)(3). *See Korst v. McMahon*, 136 Wn. App. 202, 206, 148 P.3d 1081 (2006). CR 41(b)(3) addresses involuntary dismissal of cases. Here, the trial

CR 50 did not authorize a directed verdict in this case. Therefore, the trial court erred by granting Fritz's motion for a directed verdict after allowing only Fritz the opportunity to present evidence and refusing to allow Pronesti any opportunity to present evidence.

B.     APPELLATE ATTORNEY FEES

1.     Pronesti's Request for Attorney Fees

Pronesti requests appellate attorney fees under RCW 51.52.130. RCW 51.52.130 pertains to attorney fees in industrial insurance appeals. Because this case is not an industrial insurance appeal, RCW 51.52.130 does not apply. Pronesti cites no other authority providing for appellate attorney fees. Therefore, we deny Pronesti's request for appellate attorney fees.

2.     Fritz's Request for Attorney Fees

Fritz requests attorney fees in the conclusion of his brief and states that "[t]his appeal should be dismissed and [Fritz] should be awarded his costs and fees incurred for having to respond." Br. of Resp't at 10. We disagree.

RAP 18.1(a) provides that "[i]f applicable law grants to a party the right to recover reasonable attorney fees or expenses . . . the party must request the fees or expenses as provided in this rule." RAP 18.1(b) provides that "[t]he party must devote a section of its opening brief to the request for the fees or expenses." RAP 18.1(b) "requires more than a bald request for attorney fees on appeal." *Stiles v. Kearney*, 168 Wn. App. 250, 267, 277 P.3d 9, *review denied*, 175 Wn.2d 1016 (2012).

---

court's "directed verdict" did not result in dismissal of the action, so the trial court's directed verdict cannot be construed as an involuntary dismissal under CR 41(b)(3).

Here, Fritz did not provide any argument or citation to law granting him the right to attorney fees or costs, nor did he devote a section of his opening brief to his request for attorney fees or costs. Therefore, we deny Fritz's request for attorney fees and costs on appeal.

CONCLUSION

Because CR 50 does not authorize a directed verdict in bench trials, the trial court allowed only Fritz the opportunity to present evidence, and the trial court refused to allow Pronesti any opportunity to present evidence, the trial court erred. Therefore, we reverse the trial court's order directing that the interpleader funds be released to Fritz and remand for a new trial. We also deny both parties' requests for appellate attorney fees.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

Lee, J.

We concur:

Cruser, A.C.J.

Price, J.

7