# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

# DIVISION II

| | |
|---|---|
| ERIC S. BEHNKE, | No. 59308-4-II |
| Appellant, | |
| v. | |
| AT&T, INC. and THE DEPARTMENT OF LABOR AND INDUSTRIES, | UNPUBLISHED OPINION |
| Respondents. | |

CRUSER, C.J. — Eric Behnke was in an automobile collision in April 2015 while he was driving for his employer, AT&T. After the accident, he suffered from back pain and filed a worker's compensation claim with the Department of Labor and Industries. The department allowed the claim, but in February 2021, the department closed Behnke's claim and found that he did not suffer from a permanent partial disability. Behnke appealed the department's order to the Board of Industrial Insurance Appeals. In March 2022, the board affirmed the department's order. The board found that 1) Behnke's injury caused by the 2015 collision was fixed and stable by the date the department closed his claim, meaning he was not entitled to further treatment; 2) he was not a temporarily totally disabled worker during the time period in question; 3) he was not a permanently totally disabled worker as of the date the claim closed; and 4) he did not have a permanent partial disability proximately caused by the industrial injury. Behnke appealed the

board's decision to the superior court, where his case was heard by a jury in August 2023. The jury returned a verdict affirming the board's decision.

Behnke appeals, arguing that the superior court erred in 1) admitting evidence of Behnke's preexisting injuries; 2) admitting cumulative expert defense testimony; 3) providing prejudicial jury instructions and declining to give two of Behnke's proposed instructions; and 4) misapplying the Industrial Insurance Act (IIA).

We hold that 1) Behnke's claim that the superior court abused its discretion in admitting evidence of Behnke's preexisting conditions does not warrant our review, as Behnke's briefing on the issue was insufficient and did not comply with the Rules of Appellate Procedure (RAP); 2) the superior court did not abuse its discretion in allowing the jury to hear testimony from three orthopedic surgeons deposed by AT&T because the board heard testimony from all three and the jury needed to review the same evidence reviewed by the board; 3) the superior court did not abuse its discretion in declining to adopt two of Behnke's proposed jury instructions and the court did not err in adopting two instructions proposed by AT&T because the instructions were neither factually nor legally misleading; and 4) the superior court did not err in its application of the IIA. Accordingly, we affirm.

FACTS

I. INDUSTRIAL INJURY

In April 2015, while Behnke was driving a van for his employer, AT&T, he was rear-ended by a FedEx truck on I-5. After the accident, Behnke felt pain in his low back. Behnke's supervisor drove him home from the accident and then his fiancé took him to the emergency department. According to emergency department records, Behnke complained that his neck and back hurt and

that he was experiencing numbness in his right hand. After examining Behnke in the hospital, the emergency department doctors discharged him with pain medication and a referral for chiropractic treatment.

Over the course of the following four years, Behnke received various treatments to cope with his back injury. He received chiropractic care, massage therapy, acupuncture, physical therapy, and injections for pain management. A spinal cord stimulator was inserted in 2019.

## II. MEDICAL HISTORY & EXAMINATIONS

A. History of Back Injuries

Prior to the 2015 industrial injury, Behnke experienced multiple other back-related injuries. In 1990, he injured his back and neck in a car accident. He made a full recovery from that accident and was able to resume work and regular activities. In 2003, Behnke injured his low back falling down a set of stairs, but after attending physical therapy, he again made a full recovery. In 2007, during his service with the National Guard, Behnke suffered a third back injury. By 2010, after receiving treatment, Behnke was able to resume work without restrictions but he continued to experience some pain from this injury. In testifying before the board, Behnke stated that prior to April 2015, he was still experiencing back pain but he was able to work without restrictions and engage in daily activities.

B. Treatment & Examinations After 2015 Industrial Injury

Throughout the course of his treatment after the collision, Behnke saw multiple healthcare providers. Relevant to this appeal, three of the physicians who examined Behnke were retained by AT&T and two were retained by Behnke. Depositions of these physicians were taken and recorded in the "Certified Appeals Board Record" (CABR) which the board considered in its review of

Behnke's case. While the court granted minor redactions, the majority of the CABR was read aloud to the jury during trial.

*1. Testimony from Physicians Retained by Behnke*

Shortly after the accident, Behnke saw Dr. Mitchell Derrick for chiropractic treatment. Dr. Derrick diagnosed Behnke with spinal strain/sprain. Dr. Derrick recommended that Behnke stop working. He approved Behnke to resume light duty work in 2016. However, no light duty positions were available with AT&T at that time. Based on a review of multiple MRIs and examinations of Behnke, Dr. Derrick testified that Behnke had degenerative disc disease (DDD) which had worsened between 2007 and 2015. Dr. Derrick believed that Behnke "had chronic low back pain prior to the industrial injury, and the industrial injury aggravated or exacerbated the preexisting DDD." Clerk's Papers (CP) at 75. In his deposition in 2021, Dr. Derrick testified that he believed Behnke was still unable to go back to work due to the injuries he suffered from the 2015 collision.

Dr. Patrick Bays, an orthopedic surgeon, examined Behnke in 2017 and 2021. In Dr. Bays' opinion, prior to the 2015 collision, Behnke "had preexisting degenerative changes to both the cervical and the lumbar spine." *Id.* at 564. He opined that after the accident, "those preexisting degenerative changes were permanently aggravated or lit up as a consequence" of the collision. *Id.* Dr. Bays believed that Behnke "could not return to his job of injury, would not have been able to engage in gainful employment as of February 2021, and that at a minimum he would need a more sedentary job." *Id.* at 76.

*2. Testimony from Physicians Retained by AT&T*

During Behnke's appeal of the department's order closing his claim, AT&T retained three orthopedic surgeons: Dr. Alan Brown, Dr. Aleksandar Curcin, and Dr. David Karp. The testimony

of these three surgeons was included in the CABR, which was reviewed by the board and later, by the jury.

Dr. Brown examined Behnke in 2019 and reviewed his medical records. Behnke reported to Dr. Brown that prior to the accident, he had a history of low back pain, and his "pain levels were somewhere between four to six or seven out of ten," although usually on the lower end of that range. *Id.* at 711. Dr. Brown noted that according to Behnke's medical records, Behnke's care team had recommended a spinal fusion surgery in 1990. Behnke's surgeon at that time ordered a psychological evaluation to assess whether Behnke was a strong candidate for the fusion surgery, and the evaluation revealed that Behnke had " 'rather significant adjustment reaction to his chronic pain problems,' " making him a "marginal candidate for surgery." *Id.* at 713. Additionally, Behnke's medical records show that he was diagnosed in 1991 with lumbar degenerative disk disease and radiculopathy. According to Dr. Brown, a degenerative disk disease is "[s]omething that essentially everybody develops sooner or later," as a part of aging. *Id.* Dr. Brown opined that aside from the pain Behnke was experiencing, everything was working normally. He explained that it was abnormal to experience pain during the physical tests but that the pain Behnke experienced was not "in an area that would support that his nerve roots were being damaged or weren't working right." *Id.* at 719.

Dr. Curcin, who examined Behnke in 2020, "found no impairment in Mr. Behnke's ability to use muscle groups in his arms or legs." *Id.* at 77. Based on his examination and review of Behnke's medical records, Dr. Curcin opined that Behnke had a degenerative disease that preexisted the injury, as well as "an extensive history of chronic pain, and preexisting unrelated conditions that were not aggravated" by the industrial injury. *Id.* Dr. Curcin described the

automobile collision as a "relatively minor energy collision," and stated that "[u]nder the worst circumstances, I would have expected him to require, . . . 10 to 12 weeks of treatment." *Id.* at 765. He opined that the "industrial injury did not aggravate or light-up Mr. Behnke's preexisting conditions." *Id.* at 77-78.

Finally, Dr. Karp, who examined Behnke in September 2019, "diagnosed Mr. Behnke with resolved localized strains to his neck and lower back." *Id.* at 78. Dr. Karp "determined that Mr. Behnke did not have any permanent impairment to his neck or low back related to the industrial injury and could perform his job duties without restrictions." *Id.*

### III. Procedural History

A. Worker's Compensation Claim

In April 2015, the month he was injured, Behnke applied for benefits through the department. In June 2015, the department issued an order allowing Behnke's industrial injury claim. In February 2021, the department issued two orders. The first order found that as of November 6, 2020, AT&T was no longer responsible for time-loss compensation benefits. The second order found that "[t]ime-loss compensation benefits ended as paid through 11-5-20," medical treatment was no longer necessary, and Behnke did not have a permanent partial disability. *Id.* at 318. The department closed the claim on February 24, 2021.

Behnke appealed the department's orders to the board in March 2021. In March 2022, the board affirmed the department's orders. The board found that 1) Behnke's "condition proximately caused by the industrial injury was fixed and stable as of February 24, 2021," and as such, he was not entitled to further treatment; 2) he "was not a temporarily totally disabled worker" under the statutory definition between the dates in question; 3) he was not a permanently totally disabled

worker as of the date of his claim closure; and 4) he "did not have a permanent partial disability, within the meaning of RCW 51.32.080, proximately caused by the industrial injury." *Id.* at 83.

B. Jury Trial

Behnke appealed the board's order to the superior court. The case was heard by a jury in August 2023. Behnke takes issue with the trial court's decision to include the portion of the CABR that includes his medical history from before the collision, as well as the trial court's decision to include testimony from all three orthopedic surgeons who were deposed by AT&T.

*1. Motion to Exclude Medical History*

Prior to trial, Behnke apparently filed a motion to exclude Behnke's medical history. Behnke does not include a record citation to this motion in his brief, nor to the portions of the verbatim report of proceedings where he argued this motion to the trial court.[1] He also does not include a citation to the verbatim report of proceedings containing the trial court's ruling on his motion.

*2. Motion to Exclude Expert Testimony*

Behnke moved to limit AT&T's number of expert witnesses. The CABR contained depositions from the three orthopedic surgeons hired by AT&T. Behnke argued that because only one of the three experts for AT&T had examined Behnke on a date close to the critical dates in the case ("[t]he status of medical condition and wage loss, November 6, 2020; and claim closure, February 24, 2021"), it would be prejudicial to include testimony from the other two surgeons.

---

[1] Behnke does not provide a record citation in his brief to his argument below, nor a record citation to the actual motion.

Verbatim Rep. of Proc. (VRP) at 2.[2] Moreover, Behnke argued, allowing AT&T to present testimony from three surgeons while Behnke retained only one surgeon and one chiropractic physician would be prejudicial because it could signal to the jury that they "should believe that weight of more." *Id.*

Behnke also argued that allowing AT&T to present testimony from three surgeons would violate WAC 296-23-309, which was adopted by the department in April 2022, and limits the number of independent medical examinations per claim that an injured worker must submit to.

AT&T responded that the trial in the superior court is actually an appeal from the board under the IIA, and that the jury acts in an appellate capacity. The function of the jury, according to AT&T, is to review whether the board was correct in its decision. AT&T argued that "the trier of fact needs to hear what the Board heard in order to make an accurate judgment on whether the Board was correct or was not correct." *Id.* at 5. As such, AT&T contended, the jury needed to be able to review the evidence within the CABR which had been reviewed by the board.

The trial court denied Behnke's motion to exclude AT&T's experts. The trial court agreed with AT&T and reasoned that because the board considered the testimony of the three experts, this information was relevant to the jury in deciding whether the board's decision was correct. The trial court also ruled that WAC 296-23-309 does not contain any indication that it is to be applied retroactively.

---

[2] All citations to the verbatim report of proceedings are to the volume filed on November 23, 2023. This volume includes transcripts from the following dates: Jan. 20, 2023, Aug. 3, 2023, Aug. 7, 2023, Aug. 8, 2023, and Aug. 10, 2023.

*3. Jury Instructions*

During the jury trial, Behnke took exception to the court's decision to decline to give two of his proposed instructions. The first instruction, proposed instruction 15, discussed the IIA and read:

>  There is a hazard in all employment and it is the purpose of the [IIA] to embrace all employments which are within the legislative jurisdiction of the state.

>  The law shall be liberally construed for the purpose of reducing to a minimum the suffering and economic loss arising from injuries, disease and/or death occurring in the course of employment.

CP at 1464. The second instruction which the court declined to adopt, proposed instruction 17, read:

>  The benefits of the [IIA] are not limited to those workers who are in perfect health at the time of the occupational disease. The worker is to be taken as he is, with all his preexisting frailties and bodily infirmities. Nor does it matter that the occupational disease might not have produced the same effect in the case of a worker in normal health.

*Id.* at 1466.

Additionally, Behnke objected to the court's adoption of defense proposed instructions 12 and 20. The adopted instructions read, respectively:

>  Aggravation of a preexisting condition may be temporary or permanent. The difference in temporary aggravation and permanent aggravation is duration of time.

>  [. . .]

>  If you find that:
>  (1) before the industrial injury, Eric Behnke had a bodily condition that was not disabling or requiring treatment; and
>  (2) because of the industrial injury the pre-existing condition was lighted up or made active; Then Eric Behnke is eligible for benefits for his full disability even though Eric Behnke disability may be greater than it would have been for a person in the same circumstances without that pre-existing condition.

A worker may not be eligible for benefits, however, for any treatment or disabilities that resulted from the natural progression of the pre-existing condition independent of this industrial injury.

CP at 1529, 1538.

## ANALYSIS

### I. STANDARD OF REVIEW

In industrial insurance cases, we review the superior court's decision, not the board's order. RCW 51.52.140; *Dillon v. Dep't of Lab. & Indus.*, 186 Wn. App. 1, 6, 344 P.3d 1216 (2014). We review the superior court's decision in the same way we review other civil cases. RCW 51.52.140. "In reviewing the superior court's decision, the role of the appellate court is to determine whether the trial court's findings are supported by substantial evidence and whether those findings support the conclusions of law." *Zavala v. Twin City Foods*, 185 Wn. App. 838, 859, 343 P.3d 761 (2015). "A court abuses its discretion when its decision is manifestly unreasonable, or exercised on untenable grounds or for untenable reasons." *Gildon v. Simon Prop. Grp., Inc.*, 158 Wn.2d 483, 494, 145 P.3d 1196 (2006). "An abuse of discretion is found if the trial court relies on unsupported facts, takes a view that no reasonable person would take, applies the wrong legal standard, or bases its ruling on an erroneous view of the law." *Id.*

As Division Three of this court explained in *Zavala*, "We must review the record in the light most favorable to the party who prevailed in superior court. . . . We do not weigh or balance the competing testimony and inferences, or apply anew the burden of persuasion." *Zavala*, 185 Wn. App. at 859 (internal citation omitted).

10

## II. THE ADMISSION OF EVIDENCE REGARDING BEHNKE'S PREEXISTING INJURIES & CONDITIONS

### A. Legal Principles

"Admission of evidence lies largely within the sound discretion of the trial court; absent abuse of that discretion there is no error." *Davis v. Globe Mach. Mfg. Co., Inc.*, 102 Wn.2d 68, 76, 684 P.2d 692 (1984). "A trial court abuses its discretion when its exercise of discretion is manifestly unreasonable or based upon untenable grounds or reasons." *Id.* at 77.

The Rules of Evidence, state that "[r]eference to the record must be included for each factual statement." RAP 10.3(a)(5). An appellant's brief must include "[t]he argument in support of the issues presented for review, together with citations to legal authority and references to relevant parts of the record." RAP 10.3(a)(6). The supreme court explained in *State v. Olson*, 126 Wn.2d 315, 323, 893 P.2d 629 (1995), that

> [i]n a case where the nature of the appeal is clear and the relevant issues are argued in the body of the brief and citations are supplied so that the court is not greatly inconvenienced . . . there is no compelling reason for the appellate court not to exercise its discretion to consider the merits of the case or issue.

However, we will not consider an argument on appeal if the grounds for that argument are not supported by any reference to the record or by citation to authority. *Cowiche Canyon Conservancy v. Bosley*, 118 Wn.2d 801, 809, 828 P.2d 549 (1992). "We cannot and will not comb through the record on the possibility that some mistake may lie somewhere within." *Multicare v. Dep't of Soc. & Health Servs.*, 173 Wn. App. 289, 299, 294 P.3d 768 (2013).

### B. Application

Behnke argues that the superior court erred in denying his motion to exclude testimony and records regarding his medical history of preexisting injuries and back issues. Behnke does not point us in the record to his motion to exclude this evidence, nor to the trial court's ruling on the

motion—a ruling he asks us to conclude was an abuse of the trial court's considerable discretion in the decision to admit evidence. Behnke simply states in his brief that "[t]he [s]uperior [c]ourt improperly denied [his] motion to exclude medical records, testimony, or argument that pre-existing medical conditions caused [his] post-collision injuries and pain." Br. of Appellant at 12. Behnke then argues to us, as though we would decide this issue de novo, that evidence of his preexisting conditions should not have been admitted at his trial. Behnke's brief does not comply with RAP 10.3(a)(6). We cannot guess at what Behnke complains of, find it in the record, and then construct his argument for him—all things we would need to do to grant him the relief he seeks. We are not advocates. Because Behnke failed to adequately brief this issue, we decline to reach it.

Moreover, we note that Behnke relies entirely on inapposite tort caselaw for his argument that preexisting medical conditions are inadmissible. He cites no case holding that preexisting medical conditions are inadmissible in a trial under the IIA, particularly where the injured worker argued to the department that the industrial accident lit up a previous condition. We also note that Behnke cites no authority for the proposition that a trial court in an IIA case can change the record submitted to the jury. Pursuant to RCW 51.52.115, the superior court in an IIA case is provided with the record reviewed by the board. "If the court shall determine that the board has acted within its power and has correctly construed the law and found the facts, the decision of the board shall be confirmed; otherwise, it shall be reversed or modified." RCW 51.52.115. Behnke's argument is that the trial court should have removed a significant portion of the evidence heard by the board, but he points us to no authority that would permit a trial court to do this. We will not review an issue unsupported by authority or persuasive argument, as is the case here. *State v. Johnson*, 119 Wn.2d 167, 171, 829 P.2d 1082 (1992).

Finally, even if the trial court abused its discretion in admitting this evidence, we would review such error to determine whether it was harmless. On this point, Behnke offers this single sentence: "This error was prejudicial, and the admission of this improper evidence impacted the information provided to the jurors regarding Mr. Behnke's industrial injuries." Br. of Appellant at 16. This is insufficient, particularly in light of the fact that the existence of Behnke's industrial injury was not at issue in this case, but rather, the issue was whether Behnke remained unable to work as a result of the injury or whether his condition had become fixed and stable. At no time did AT&T dispute that Behnke suffered an industrial injury.

### III. THE SUPERIOR COURT DID NOT ERR IN ADMITTING EXPERT TESTIMONY FROM MULTIPLE ORTHOPEDIC SURGEONS

Behnke argues that the superior court erred in allowing the jury to hear testimony from the three orthopedic surgeons retained by AT&T for two reasons. First, he claims that the testimony was cumulative and resulted in prejudice against him. Second, Behnke argues that under WAC 296-23-309, which was enacted well after the medical examinations were completed in this case, he was entitled to have the testimony of two of the three surgeons retained by AT&T removed from the record. This is so, Behnke contends, because WAC 296-23-309 now "allows for one complete examination allowing or denying a new claim, and specifically limits the examinations per claim to one complete examination including report from all appropriate specialties." Br. of Appellant at 20. Stated another way, Behnke argues that WAC 296-23-309 is a rule of evidence, not merely a rule governing the processing of IIA claims.

AT&T responds that Behnke fails to show that the superior court abused its discretion in allowing the jury to hear testimony from its three expert witnesses, and fails to demonstrate that

the testimony resulted in prejudice against him. As for Behnke's claim regarding WAC 296-23-309, AT&T argues that it does not apply to this case and does not supplant the rules of evidence.

We hold that the superior court did not abuse its discretion in allowing the jury to hear testimony from the three surgeons hired by AT&T. Here again, Behnke cites no authority allowing the superior court to excise significant, substantive portions of the record in a jury trial in which the evidence considered by the jury consists of the record before the board. RCW 51.52.115. The jury was tasked with determining whether the board was correct in its decisions, and as such, the jury needed to review the same evidence reviewed by the board. Furthermore, Behnke does not persuade us that WAC 296-23-309 operates as a rule of evidence or, even assuming the trial court did abuse its discretion in admitting this evidence, that this error was not harmless.

A. Legal Principles

"The admissibility and scope of an expert's testimony is a matter within the court's discretion. . . . Similarly, the admissibility of cumulative evidence lies within the trial court's discretion." *Christensen v. Munsen*, 123 Wn.2d 234, 241, 867 P.2d 626 (1994) (internal citation omitted). According to the rules of evidence, "[a]lthough relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." ER 403.

WAC 296-23-309, which went into effect in April of 2022, provides:

> Unless explicitly required by statute, the total number of examinations per claim is limited as follows:
>
> (1) One complete examination including report prior to an order under RCW 51.52.050 or 51.52.060 allowing or denying a new claim unless an additional examination is authorized by the department in state fund or self-insured cases;

(2) One complete examination including report(s) from all appropriate specialty(ies) for an impairment rating unless the prior rating examination determined a rating was premature and/or further treatment was needed and is authorized by the self-insured employer or department;

(3) One complete examination including report(s) from all appropriate specialty(ies) to adjudicate any application to reopen a claim under RCW 51.32.160 prior to a final order under RCW 51.52.050 or 51.52.060 allowing or denying reopening of the claim, unless the department authorizes an additional examination in state fund and self-insured cases. Additional impairment rating examinations are allowed following each time a claim is reopened under RCW 51.32.160;

(4) One examination may be performed after any new medical issue is contended to resolve a new medical issue prior to a final order, under RCW 51.52.050 or 51.52.060, accepting or denying responsibility of the condition, unless the department authorizes an additional examination in state fund and self-insured cases; and

(5) Additional examinations per case progress rules and to resolve appeals as outlined in WAC 296-23-308 and 296-23-401.

B. Application

Behnke argues, in part, that he was prejudiced because the testimony from the three surgeons was cumulative. He cites to *Brown v. Spokane County Fire Protection District No. 1*, 100 Wn.2d 188, 196, 668 P.2d 571 (1983), for support. In *Brown*, a portion of audio tape was played for the jury that should have been excluded as hearsay. *Brown*, 100 Wn.2d at 195. The court of appeals found that "the admission of the objectionable portion of the tape was not reversible error because the statements were merely cumulative" of a lieutenant's testimony at trial. *Id.* at 196. The supreme court affirmed the court of appeals and held that "the evidence, *being merely cumulative in nature*, was harmless error." *Id.*

Here, Behnke urges us to arrive at the opposite conclusion of *Brown* and hold that the testimony of the three surgeons in this case constituted reversible error *because* it was cumulative.

On this point, he contends merely that because three witnesses are more than one, the inclusion of the testimony of two of the surgeons was necessarily prejudicial. Behnke offers no analysis of the testimony of the surgeons and makes no attempt to explain what, particularly, was unduly prejudicial about their testimony. It is axiomatic that insofar as it strengthens one's case, all testimony is prejudicial to the party against whom it is offered. The question before us is whether the prejudice was *unduly* prejudicial, such that its admission was erroneous. Finding no error, we affirm.

Behnke also includes a quote from *Bruce v. Byrne-Stevens & Associates Engineers, Inc.*, stating that " 'admissibility turns primarily on whether the expert's testimony will be of assistance to the finder of fact.' " Br. of Appellant at 18 (quoting 113 Wn.2d 123, 130, 776 P.2d 666 (1989). Here, the superior court admitted the testimony from the three surgeons hired by AT&T, in part, because the issue before the jury was to determine whether the board was correct in reaching its decision. The court explained that "the trier of fact needs to hear what the Board heard in order to make an accurate judgment on whether the Board was correct or was not correct." VRP at 5. As such, admitting the testimony of the three surgeons was very much relevant and of assistance to the trier of fact.

Finally, Behnke argues that the trial court abused its discretion in allowing the jury to hear testimony from the three orthopedic surgeons because, he contends, the testimony violated WAC 296-23-309. Behnke broadly cites WAC 296-23-309 in support of his argument, ignoring that this WAC contains five subsections and numerous caveats. Once again, we are left to guess as to the precise provision and language he believes compels us to grant the relief he seeks. Behnke points us to no language within this WAC suggesting it is to be used as a rule governing the admission

16

of evidence. Applying the most charitable reading to his argument, Behnke appears to contend that admitting the testimony of all three surgeons (as opposed to just one) violates the *spirit* of WAC 296-23-309, and that the trial court should have redacted the testimony of two of the surgeons as an equitable remedy. If that is Behnke's argument, he cites no authority in support of this request.

Additionally, as the superior court pointed out, the statute does not include any language indicating that it is intended to have retroactive effect, nor does Behnke make an effort to demonstrate that it does. The department issued its order closing Behnke's claim in February 2021 and the board reached its decision in March 2022. Behnke does not persuade us that WAC 296-23-309, which went into effect after the board's decision, should have compelled the excision of the testimony of two surgeons from the CABR prior to it being read to the jury at the superior court trial. We find no abuse of discretion.

In sum, the superior court did not abuse its discretion in allowing the jury to hear the testimony of the three surgeons retained by AT&T because while the testimony may have been cumulative in nature, the testimony was considered by the board in reaching its decision and it was not unduly prejudicial. Additionally, the admission of the surgeons' testimony did not violate WAC 296-23-309. If any error occurred in admitting the surgeons' testimony, Behnke fails to persuade us that the error was not harmless.

IV. THE SUPERIOR COURT DID NOT ERR IN ADOPTING TWO PROPOSED JURY INSTRUCTIONS AND DECLINING TO ADOPT TWO OTHER PROPOSED INSTRUCTIONS

Behnke argues that the superior court erred in rejecting two of his proposed jury instructions (proposed instructions 15 and 17). Proposed instruction 15 stated that the IIA "shall be liberally construed for the purpose of reducing to a minimum the suffering and economic loss arising from injuries, disease and/or death occurring in the course of employment." CP at 1464.

According to Behnke, proposed instruction 15 should have been given because it "properly restates the statute" and includes the premise and purpose of liberal construction within the IIA. Br. of Appellant at 26.

Behnke also challenges the trial court's failure to give his proposed instruction 17, which said that the benefits of the IIA are not limited to "workers who are in perfect health," and stated that "[t]he worker is to be taken as he is, with all his preexisting frailties and bodily infirmities. Nor does it matter that the occupational disease might not have produced the same effect in the case of a worker in normal health." CP at 1466. Behnke contends that instruction 17 "gave critical information about the application of the IIA" on "how the jury should view preexisting conditions," and that the failure to give this instruction prejudiced him. Br. of Appellant at 27.

Behnke also argues that the court erred in adopting instructions 12 and 20. He claims that in providing instruction 12, the court "overemphasized the employer's case" because the instruction restated that "aggravation may be temporary or permanent," which was already included in instruction 19. *Id.* He makes a similar argument regarding instruction 20, claiming that the language in instruction 20 again "overemphasized the [d]efendant's claims about temporary and permanent disability," which was already stated in instruction 19. *Id.* at 28. Overall, he claims that "[t]aken as a whole, the jury instructions were misleading and prejudicial," as they disproportionately emphasized AT&T's arguments and misled the jury regarding the IIA. *Id.* at 29.

AT&T responds that the jury instructions were "neither factually nor legally misleading." Br. of Resp't at 31. With respect to Behnke's challenge to instructions 12 and 20, AT&T responds that the instructions were not erroneous and that Behnke's claims that the instructions were

redundant and "overemphasized" AT&T's case are not grounds for finding error. *Id.* at 35. With regard to Behnke's proposed instructions 15 and 17, AT&T argues that these proposed instructions misrepresented the law, explaining that "liberal construction" within the context of the IIA is not meant to be applied to questions of fact. *Id.* at 34-35. We agree with AT&T and hold that the superior court did not err in regard to the jury instructions it adopted and declined to adopt.

A. Legal Principles

We review the content of jury instructions de novo for legal accuracy. *Gerlach v. Cove Apartments, LLC*, 196 Wn.2d 111, 127, 471 P.3d 181 (2020); *Joyce v. Dep't of Corrs.*, 155 Wn.2d 306, 323, 119 P.3d 825 (2005). On the other hand, we review the decision to give a particular instruction, if based on a matter of fact, for abuse of discretion. *Lake Hills Invs., LLC v. Rushforth Constr. Co., Inc.*, 198 Wn.2d 209, 215-16, 494 P.3d 410 (2021).

"Jury instructions are sufficient if they allow the parties to argue their theories of the case, do not mislead the jury and, when taken as a whole, properly inform the jury of the law to be applied." *Hue v. Farmboy Spray Co., Inc.*, 127 Wn.2d 67, 92, 896 P.2d 682 (1995). An erroneous jury instruction warrants the grant of a new trial if it prejudices a party. *Joyce*, 155 Wn.2d at 323. " 'Prejudice is presumed if the instruction contains a clear misstatement of law[. However,] prejudice must be demonstrated if the instruction is merely misleading.' " *Lake Hills Invs.*, 198 Wn.2d at 216 (alteration in original) (internal quotation marks omitted) (quoting *Paetsch v. Spokane Dermatology Clinic, P.S.*, 182 Wn.2d 842, 849, 348 P.3d 389 (2015)). When an instruction misstates the law, the presumption of prejudice can be rebutted only by showing that the error was harmless. *Id*.

B. Application

The superior court did not abuse its discretion in declining to give Behnke's proposed instructions 15 and 17, and the court did not err in providing instructions 12 and 20 because they were neither misleading nor a misstatement of the law.

First, the decision whether to give a specific jury instruction is within the superior court's discretion. *Lake Hills Invs.*, 198 Wn.2d at 215-16. Proposed instruction 15, discussed the purpose of the IIA, namely that it shall "embrace all employments which are within the legislative jurisdiction of the state," and the act must be liberally construed in order to reduce suffering and economic loss caused by industrial injuries. CP at 1464. As AT&T points out, instruction 2, while employing different language, also discussed the purpose of the IIA. Proposed instruction 17 stated that the benefits of the IIA "are not limited to those workers who are in perfect health at the time of the occupational disease," and the worker must be taken as they are. CP at 1466. Again, as AT&T points out, the court's given instructions largely cover this information.

The court's instructions state that the IIA applies to all covered workers "regardless of their age or the previous condition of their health," and "[i]n determining the effect of an occurrence upon a worker, such effect must always be determined with reference to the particular worker involved, rather than on the effect, if any, it would have had upon some other person." CP at 1528. (Instruction 11). Moreover, instruction 19 stated that "a determination of total disability should be made by giving consideration to the individual worker's weaknesses and strengths, age, education, training and experience, any permanent loss of function which pre-existed the industrial injury and any permanent loss of function that was proximately caused by the industrial injury." *Id.* at 1537 (Instruction 19). Through its instructions, the superior court largely conveyed the information

sought by Behnke. The court did not abuse its discretion in declining to adopt Behnke's specific instructions.

Next, Behnke argues that the court erred in giving instruction 12 and instruction 20. He argues that instruction 12 "unfairly overemphasized the employer's case," because it discussed the premise that aggravation could be temporary or permanent, despite the fact that instruction 19 also discusses the difference between temporary and permanent disability. Br. of Appellant at 27. Behnke makes similar arguments regarding instruction 20, contending that it was both unnecessary and "overemphasized the [d]efendant's claims about temporary and permanent disability," resulting in prejudice to Behnke. Br. of Appellant at 28.

An erroneous jury instruction is grounds for reversal only if it resulted in prejudice. *Joyce*, 155 Wn.2d at 323. "Prejudice is presumed if the instruction contains a clear misstatement of law." *Lake Hills Invs.*, 198 Wn.2d at 216 (internal quotation marks omitted) (quoting *Paetsch*, 182 Wn.2d at 849). However, if an instruction does not misstate the law, and is merely misleading, prejudice must be demonstrated. *Id.* Behnke does not argue that either instruction 12 or 20 misstated the law. Rather, he simply argues that they prejudiced him by "overemphasizing" AT&T's theory of the case. Behnke fails to demonstrate how these two instructions prejudiced him by merely repeating some of the information contained in other instructions. Accordingly, the superior court did not err in giving instructions 12 and 20, or in declining to give Behnke's proposed instructions 15 and 17.

## V. THE SUPERIOR COURT DID NOT ERR IN ITS APPLICATION OF THE IIA

Behnke argues that the IIA requires courts to construe it in a way so as "to achieve its purpose of providing compensation to all covered employees injured in their employment." Br. of Appellant at 29-30. Moreover, he contends, "all doubts as to how to construe the IIA must be resolved in favor of the worker." *Id.* at 30. He argues that the trial court failed in both respects when it denied his motion to exclude AT&T's multiple expert witnesses, because the intent of the IIA "is to provide relief for workers and resolve doubts in favor of the workers." *Id.* at 32.

AT&T responds that the liberal construction required by the IIA does not apply to matters of fact, as Behnke is suggesting. Moreover, AT&T contends that adopting Behnke's position would require automatic verdicts in favor of workers.

We hold that the superior court did not misapply the IIA. The premise of liberal construction contained in the IIA is meant to apply to doubts regarding the application of the act itself, not to factual determinations, which are for the trier of fact to decide.

A. Legal Principles

The IIA states that because "[t]he remedy of the worker has been uncertain, slow and inadequate," and because "[t]he welfare of the state depends upon its industries," and "upon the welfare of its wage worker," the act provides "sure and certain relief for workers, injured in their work, and their families and dependents is hereby provided regardless of questions of fault and to the exclusion of every other remedy." RCW 51.04.010.

However, the statute does not provide automatic relief for workers. "There remain limits to recovery. In order for a claimant to recover under the workers' compensation act, she must establish a causal connection between the work injury and the subsequent physical condition."

*Zavala*, 185 Wn. App. at 861. The disability in question must result from the industrial injury rather than solely resulting from a preexisting condition. *Id*. "The employee must minimally show that the employment was more likely than not a contributing factor to the injury." *Id*. "A preexisting condition is not 'lit up' if the weight of the evidence reveals that the condition was a naturally progressing condition that would have progressed to the same symptoms without the injury." *Id*.

B. Application

Behnke argues that "[l]iberal application of the IIA should have resulted in . . . resolution in favor of the worker." Br. of Appellant at 33. Behnke's contention is that the trial court's admission of the testimony of all three of AT&T's experts, as opposed to just one, went "against the intent of the IIA which is to provide relief for workers and resolve doubts in favor of the workers." *Id.* at 32. Behnke essentially argues that under the liberal construction of the IIA, any dispute of *facts* should be resolved in favor of the worker. In so doing, he misconstrues the premise of the IIA.

Behnke is correct that the IIA includes a premise of liberal construction. The relevant portion of the IIA reads: "This title shall be liberally construed for the purpose of reducing to a minimum the suffering and economic loss arising from injuries and/or death occurring in the course of employment." RCW 51.12.010.

> To this end, the guiding principle in construing provisions of the [IIA] is that the Act is remedial in nature and is to be liberally construed in order to achieve its purpose of providing compensation to all covered employees injured in their employment, with doubts resolved in favor of the worker.

*Dennis v. Dep't of Lab. & Indus.*, 109 Wn.2d 467, 470, 745 P.2d 1295 (1987).

Liberal construction in this sense applies to doubts regarding the application of act itself, not the facts of a particular case. As part of his claim under the IIA, Behnke was required to establish that the 2015 collision was "more likely than not a contributing factor to [his] injury." *Zavala*, 185 Wn. App. at 861. Again, whether a worker's disability resulted from the industrial injury or solely from a preexisting condition is a question of fact. *Id.* at 862.

"We do not weigh or balance the competing testimony and inferences, or apply anew the burden of persuasion." *Id.* We defer to the fact finder and we do not review credibility determinations on appeal. *Mitchell v. Washington State Inst. of Pub. Pol'y*, 153 Wn. App. 803, 814, 225 P.3d 280 (2009).

Behnke does not explain how the resolution of facts by the board, and the subsequent review of the board's decision as to those facts by the superior court jury, somehow resulted in a misapplication of the IIA. In sum, we find no error in the superior court's application of IIA.[3]

## ATTORNEY FEES

If, on appeal, this court reverses or modifies the board's decision, granting additional relief to a worker, then the worker is entitled to a reasonable award of attorney fees. RCW 51.52.130. Because we affirm the decision of the superior court, Behnke is not entitled to an award of attorney fees on appeal.

---

[3] To the extent that Behnke's argument is even clear, he appears to contend that liberal construction of the IIA requires the superior court to exclude any evidence that was introduced by the employer. Behnke cites no authority for this assertion and we therefore need not address it. *Johnson*, 119 Wn.2d at 171.

No. 59308-4-II

CONCLUSION

We hold that: 1) Behnke's claim that the superior court abused its discretion in admitting evidence of Behnke's preexisting conditions does not warrant our review; 2) the superior court did not abuse its discretion in allowing the jury to hear testimony from the three surgeons hired by AT&T; 3) the superior court did not abuse its discretion in declining to adopt two of Behnke's proposed instructions and the court did not err in adopting the two instructions that Behnke proposed, as they were not misleading and did not misstate the law; and 4) the court did not misapply the IIA. Finally, we hold that because the superior court did not commit error, Behnke is not entitled to attorney fees on appeal. We affirm.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

CRUSER, C.J.

We concur:

MAXA, J.

VELJACIC, J.

25